## Wells Fargo & Company Express v. P. A. Boyle.

### No. 1701. Decided May 22, 1907.

**Sufficiency of Evidence—Causal Connection.**

Plaintiff, an employe of an express company, having been injured by the fall of packages upon him from a truck which he was wheeling, the only evidence as to the cause of their fall being his own testimony that it was due to the wheels of the truck falling into a ditch in the gravelled platform; it was error to submit, as a ground on which he could recover, negligence of the company in providing a truck which "wobbled" because of too much play of the wheels upon the axles. Though such negligence was pleaded and proven, no causal connection with the accident was shown. (Pp. 578–581.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Hunt County.

Boyle sued the express company and had judgment which was affirmed on appeal by defendant, who thereupon obtained writ of error.

*Alexander & Thompson*, for plaintiff in error.

*B. Q. Evans,* for defendant in error.—There must be reasonable evidence of negligence, but where the thing is shown to be under the management of the defendant or his servants and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from a want of care. McCray v. Galveston, H. & S. A. Ry. Co., 89 Texas, 172; Texas & N. O. Ry. Co. v. Crowder, 63 Texas Rep., 504; Missouri, K. & T. Ry. Co. v. Hawk, 5 Texas Ct. Rep., 681; Ryan v. Missouri, K. & T. Ry. Co., 65 Texas, 13.

When there is any evidence tending to support the issue, or where the evidence is conflicting or fairly susceptible of different interpretation, or the inference to be drawn from the evidence is doubtful, it is the duty of the trial court to submit the issue to the jury. Galveston, H. & S. A. Ry. Co. v. Quay, 3 Texas Ct. Rep., 914; Choate v. San Antonio & A. P. Ry. Co., 90 Texas, 82; Washington v. Missouri, K. & T. Ry. Co., 90 Texas, 314; McGowan v. International & G. N. Ry. Co., 85 Texas, 292; Potter v. Rucker, 29 Texas, 406; Johnston v. Drought, 22 S. W. Rep., 290; Dittman v. Weiss, 31 S. W. Rep., 67; Heatherly v. Little, 40 S. W. Rep., 445; Sioux City & Pac. Ry. Co. v. Stout, 17 Wall., 657, 2 Thomp. Neg., 1235; Galveston, H. & S. A. Ry. Co. v. Puente, 5 Texas Ct. Rep., 959.

BROWN, ASSOCIATE JUSTICE.—Boyle instituted this suit in the District Court of Hunt County against the express company to recover from it damages arising from an injury received by him while in its employ at Dallas and engaged in moving a truck loaded with articles of merchandise for shipment upon the train. Briefly stated, the plaintiff alleged that he was engaged as an employe of the defendant in moving one of its trucks to the express car in the train at Dallas when some articles fell from the top of the truck struck him on his head and inflicted serious injury. He charged that the defendant was guilty of negligence in two respects. First, in permitting a ditch, about seven inches wide and about four inches deep, to exist in the graveled platform over which he had to pass with the trucks, into which ditch the truck dropped while he was engaged in pulling it thereby causing the articles to fall upon and injure him. Second, that the truck he was using in performing his work was unsafe in that the wheels had too much play about the axles, and, in moving the truck, the wheels would "wabble" sufficient to cause the articles to fall from the top of the load. It is charged that the express company was negligent in both particulars and that the plaintiff had no knowledge of the existence of such defects.

The case was tried before a jury and verdict was rendered in favor of the plaintiff, upon which judgment was entered in the District Court and affirmed in the Court of Civil Appeals. The case is before this court upon two assignments of error. First, that there is no evidence to show that the injury occurred by reason of the defects in the truck which was being used by plaintiff at the time; and, second, there is no evidence to establish that there was a defect in the truck which the plaintiff was then using.

We extract from the opinion of the Court of Civil Appeals the following findings of fact:

"The plaintiff testified that the express company had six trucks at the Houston & Texas Central platform and the railroad also had seven or eight trucks and that the express company people occasionally used the trucks belonging to the railroad. When a wagon arrived at the depot with express matter to go out on a train it would stop on the east side of the platform, and the express matter would be loaded on trucks and hauled by the employes across the platform to the west side and there loaded in the express car. A train came in from the north on the Houston & Texas Central Railroad and it was while plaintiff was assisting in loading the express matter on this car that he alleges he was injured. He testified that he was injured in the following manner and from the following causes: 'When this train came in I was told by Mr. Beckett to take hold of the truck and help move it over to the car. He was the foreman helping to load and unload stuff there. I don't know who had loaded the truck. I had not assisted in loading it. Mr. Beckett was at the tongue and I was at the back end of the truck and I think possibly that Homer Allen was on one side. I think he was on the east side of this truck, north and east side. If there was anyone else I didn't know it. When I started the truck was right about fifty feet from the car, I suppose. I started northwest; Mr. Beckett was in front. When we started the truck was being pulled; I was at the back and Mr. Beckett was at the tongue. When I started across with the truck the man at the tongue controlled the movements of the truck. The truck was loaded; I don't know what all it had on it. I know some of the things that was on it, those that fell off on me—the basket of laundry and the papers. Just judging from the looks of it, it was eight or nine feet at least, from the ground to the top of the load. The truck was loaded with reference to the way they are usually and ordinarily loaded, about the same to me; looked about like the ordinary load when I took hold of it. I was working in a right good hurry; yes, sir, working hurriedly, I believe, and I pushing it. Before I got to the express car the direction of the truck was changed. Beckett changed to a direct course first, and then when he got the truck north and south, lined up with the railroad, comparatively north and south, then we changed and went back; that is, we backed the truck. I was behind the truck, the back end. I was pulling, had my face to the truck, facing northward, walking backward. As I was going in that direction, this stuff on the back end, the truck went into a hole, or ditch rather, and this express matter on the back end fell off on me. The ditch is about thirty feet north from Elm Street, that the truck ran into. I did not know at that time that there was a ditch there. The truck was going backward at the time, with a view to lining it up to the car door. The size of the ditch is about six feet long and about two or four inches deep, and about five to seven inches wide; I suppose as near as I can guess it." He further stated, "I went to the H. & T. C. platform the next morning; I went to see where I had got injured the night before. I found this ditch there that the truck had run into. I made an examination of the truck. I went to the trucks, with the exception of one, I think. There was one, I think there

that I knew was not it, because it was a big wide truck. I knew it was not the one I had used the night before, and I examined the wheels and axles; that is, I shook them about in order to see their condition, and then I noticed next how they were fixed, whether there was any play in them or not. I found there four out of six with loss of motion in the wheels. That lost motion in the wheels would cause them to wabble some. Well, they would wabble enough to throw stuff off the top.' He also testified that the spindles were bound to have been worn some. That the trucks were not all alike in play; some were different. He says the truck that he was assisting to move when injured was a Wells Fargo truck for he saw the name printed across the end."

We also copy from the opinion of the Court of Civil Appeals on motion for rehearing as follows:

"Appellee testified that the next morning after the injury occurred he went to the depot and made an examination of the trucks belonging to appellant. There were six of them. One was a large wide truck which he knew was not the one he was using when injured. Of the other five there were four that were defective in their wheels. They were worn in the axle, which would cause the truck to wabble when being run over uneven ground. The fifth was not shown to be defective. The evidence did not identify the truck in use by appellee when injured as one of the four defective trucks."

The court submitted this case to the jury upon two issues: First, that the express company was negligent in furnishing to the plaintiff, Boyle, defective trucks with which to perform his work and that such defects caused his injury. Second, that there was a ditch in the graveled platform over which Boyle was required to pass in the performance of his duty and that in passing over it the wheels of the truck went into the ditch and caused the articles to fall from the truck on his head causing the injury. The evidence was conflicting upon the last issue, but there was testimony from which the jury might have found the existence of such a ditch in the platform.

The plaintiff in error insists that there is no evidence to support the action of the court in submitting the issue of a defect in the truck used by plaintiff or that the injury arose from such defect. Counsel for the defendant in error correctly claims that, in testing the correctness of the trial court's action, this court must take the view of the evidence which is most favorable to Boyle in support of the judgment. If there be any evidence upon which the jury might reasonably have based their verdict in favor of the plaintiff upon the issue, then this court can not disturb the judgment although there be contradictions in plaintiff's testimony which might discredit him before a jury.

We will assume that the trucks were defective as stated by the plaintiff and that the truck he used was defective as claimed, restricting our inquiry to the question, did the defect in the truck proximately cause the injury to the plaintiff? There is no testimony that we have discovered which tends to show how the accident occurred except that of Boyle. In substance, he stated that he was pulling at the rear end of the truck, going backward, when the wheels went into a ditch from two to four inches deep and the articles fell upon him from the top of the load. Here is a definite and distinct statement of what caused

the articles to fall; that is, the dropping of the wheels into the ditch; but clearly. the "wabble" of the wheels did not put them into the ditch. The action of the wheels on the axle, if they were too small, could not have contributed to the dropping of the wheels into the ditch, but counsel claims that the jury may have found there was no ditch there; but if there was no ditch the wheels could not have dropped on the level surface of the platform, hence to discard the evidence of the ditch necessarily eliminates all of the facts which depend upon its existence. If there be any other statement in his testimony which will account for the injury we must accept that, but we have looked in vain through plaintiff's testimony as quoted in the opinion and also as shown in the record and in the briefs of counsel and we find no statement of anything which tends to prove that defects in the wheels caused the injury, or of any fact which points the mind to other than that the wheels dropped into the ditch. Common knowledge of men on this subject is sufficient to determine without proof that the play of the wheels on the axles would not cause such action as the dropping of the wheels, for if the ground was level the axle would be pressed down within the hub and there could be no dropping or downward motion unless as stated, the wheels came to some place which was lower and therefore necessarily descended below the surface. It is difficult to argue that a thing does not exist, beyond the statement of the fact, but in this case it seems to us that the only statement of the manner in which the injury occurred precludes any other method of its occurrence which must depend upon the fact that the spindles of the axle were worn, or that the holes in the hubs being too large for the axles contributed in any way to this injury.

We conclude that the court erred in submitting to the jury the issue of the unsafe condition of the truck because there is no evidence that such condition was the proximate cause of the injury to plaintiff. The judgments of the Court of Civil Appeals and District Court are reversed and the cause is remanded.

*Reversed and remanded.*