## BRECKENRIDGE v. COFFIELD. (No. 7529.)

(Court of Civil Appeals of Texas. San Antonio. March 31, 1926.)

**1. Husband and wife ⬅═273(12)—Proof that property sought to be partitioned was conveyed by plaintiff to defendant's mother, and hence became her separate property, held permissible, in cross-action of trespass to try title, without allegation of such fact.**

In suit to partition land as community estate of plaintiff and his deceased wife, it was unnecessary for their minor son, who intervened and claimed by inheritance from his mother, to allege that it was latter's separate estate, but, in his cross-action of trespass to try title, he could prove such fact by showing conveyance of property to her by plaintiff.

**2. Husband and wife ⬅═266—Husband's deed to wife conveys his estate to her, and property becomes her separate property, whether it was his separate property or community property.**

In absence of other evidence of intention, deed from husband to wife conveys his estate in property to her, and it becomes her separate property, whether it was his separate property or community property.

**3. Deeds ⬅═194(5).**

Presumption of delivery arises from registration.

**4. Husband and wife ⬅═248½.**

Property conveyed to woman before her marriage to grantor becomes her separate estate, and not community property.

**5. Evidence ⬅═151(2)—Plaintiff's testimony that he did not intend to convey title by his deed to defendant's mother held properly excluded.**

In trespass to try title to land, conveyed by plaintiff to defendant's mother before latter's marriage to plaintiff and regarded as her estate for over 10 years before plaintiff asserted claim following discovery of oil thereon, plaintiff's testimony that he did not intend to convey title to her was properly excluded.

**6. Estoppel ⬅═74(2).**

One inducing forgery of deed from his wife to another cannot question transfer of interests in land by latter.

7. **Husband and wife** ⊙═══273(1)—**Surviving husband held not entitled to proceeds of oil and gas in deceased wife's land, but only to interest on one-third of net income from sale of such minerals.**

Husband, on wife's death, acquired no right or title to proceeds of oil and gas in land belonging to her as against their minor son, who inherited corpus of estate, but was entitled, as holder of one-third life estate in use of land, to interest on one-third of net income from sale of oil and gas.

Appeal from District Court, Webb County; J. F. Mullally, Judge.

Action by N. B. Breckenridge against H. E. Coffield, in which J. C. Martin, as temporary guardian of the estate of William Breckenridge, a minor, and others, intervened, and named intervener set up action of trespass to try title, and in which plaintiff dismissed his suit and later intervened as defendant. From a judgment, N. B. Breckenridge appeals. Affirmed.

Gordon Gibson and John S. Morris, both of Laredo, for appellant.

S. T. Phelps, Thos. H. Ward, Hicks, Hicks, Dickson & Bobbitt, and R. D. Wright, all of Laredo, for appellee.

FLY, C. J. This is an action to obtain a partition of two tracts of land, brought by appellant against appellee, the appellant being a resident of Merida, state of Yucatan, Republic of Mexico, and appellee a resident of the state of Oklahoma. Appellant claimed one-half of the land. Appellee answered that while the legal record title of a portion of the land was in him, in fact he had no interest in the land, but is holding the same as naked trustee for A. W. Breckenridge, and he suggested that said Breckenridge was a necessary party and prayed that he be made a party. J. C. Martin, as temporary guardian of the estate of the minor William Breckenridge, intervened and claimed the whole of the two tracts as the property of his ward, and set up an action of trespass to try title, and filed an affidavit to the effect that appellant, H. E. Coffield, and A. W. Breckenridge held their claim under a deed dated June 18, 1913, which purports to have been executed by Mabel Breckenridge, conveying to Alexander W. Breckenridge an undivided three-fourths interest in the land, and alleged that such deed was a forgery. A. W. Breckenridge answered claiming one-half of the land sued for. Marshall Hicks, an attorney for Martin, filed an affidavit to the effect that he believed that the deed by Mabel Z. Breckenridge to Alexander W. Breckenridge was a forgery. In February, 1925, N. B. Breckenridge, who appears in this court as appellant, dismissed his suit, and the court so ordered. J. C. Martin asked that the Mirando independent school dis-

trict of Webb county be made a party, alleging that said district was claiming an interest in the land. N. B. Breckenridge intervened as a defendant, reaffirming his claim to one-half of the land. The Witherspoon Oil Company came into the suit and filed a general denial and plea of not guilty. Some 14 other parties filed pleas in the case, the pleadings covering 71 pages of the transcript. Twenty-four pages of the transcript are consumed in entering a judgment purporting to be based on the answer of the jury to one question as to whether the deed of Mabel Z. Breckenridge to A. W. Breckenridge was a forgery. The jury answered that it was a forgery. We adopt the statement of appellee J. C. Martin, guardian of the estate of the minor, William Breckenridge, as to the contents of the voluminous and complicated judgment:

"That the Magnolia Petroleum Company was entitled to have the surface of survey No. 2161 set aside to it by virtue of an equitable partition which resulted from the sale of this specific survey to it, because A. W. Breckenridge owned good title to an undivided one-third interest in said three surveys; that the various oil companies and parties producing oil under the original Sauvignet lease had expended more in the cost of production than the value of the oil produced; that of the royalties received by H. E. Coffield, A. W. Breckenridge, and N. B. Breckenridge, the minor was entitled to recover two-thirds thereof, and A. W. Breckenridge was entitled to one-third of such royalties; that the two-thirds of the royalties which the minor was entitled to recover should be charged with the life estate of N. B. Breckenridge in one-third thereof, which entitled the said N. B. Breckenridge to have interest for his life upon one-third of the royalties received by the minor; and a trustee was appointed to place at interest one-third of the minor's royalties so as to insure the account to N. B. Breckenridge of the revenue from one-third of such royalties. The court decided that the total royalties derived from production of oil and gas amounted to $20,842.80, and that N. B. Breckenridge, by reason of his life estate in one-third in said two surveys, was entitled to the use of only one-third thereof, which one-third is the sum of $6,947.60; but the court further found, upon the admission made in open court by N. B. Breckenridge, and the other evidence adduced, that he had received and appropriated $8,915.80 derived from oil and gas on said two surveys, and that therefore N. B. Breckenridge is indebted to the estate of the minor in the sum of $1,968.20 (the difference between $6,947.60 and $8,915.80); and the court further decided that N. B. Breckenridge is indebted to said minor's estate in the sum of $6,947.60, which should be paid into the registry of the court, which sum is a part of the corpus of said minor's estate, subject to the life estate of the said N. B. Breckenridge therein. The court also decided that N. B. Breckenridge was entitled to a life estate in one-third of said two surveys Nos. 460 and 771, and that the minor was entitled to these two surveys burdened with said life estate. The court further decided that A. W. Breckenridge and his trustee, H. E. Cof-

⊙═══For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

field (the amount received by H. E. Coffield being considered as having been received by A. W. Breckenridge), had received revenues as royalties from oil in the sum of $13,044.91, two-thirds of which amount so received amounts to $8,696.-61, but that A. W. Breckenridge paid out in discharging vendor's liens, taxes, and interest on the common estate, the sum of $21,649.33, two-thirds of which sum amounted to $14,432.89, leaving a sum of $5,736.28 which the minor's estate could have been charged with in favor of the said A. W. Breckenridge; but the said A. W. Breckenridge in open court waived any indebtedness which the minor might be owing to him, and the judgment recites that A. W. Breckenridge take nothing of the minor's estate on this account.

"The court confirmed certain assignments held under the Sauvignet lease, being those which the minor elected he would confirm."

No one complains of the judgment except the appellant, N. B. Breckenridge. The judgment gave the minor William Breckenridge two-thirds of the land as against all the parties involved in the suit and in all the oil, gas, and minerals in survey 2161, with the exception of a life estate of N. B. Breckenridge in the two surveys, 460 and 771, which he inherited from his deceased wife, Mabel Z. Breckenridge; but it was further ordered that as N. B. Breckenridge obtained his life interest after oil was discovered on the two tracts of land, he should receive only interest on one-third of the royalties to be derived from the production and sale of oil and gas on said two tracts. It was also adjudged that the minor recover of N. B. Breckenridge the sum of $1,968.20, and also the sum of $6,947.80, and that all sums due or to become due to said N. B. Breckenridge from his life estate be paid to the estate of the minor until the said sums of $1,968.20 and $6,947.60 shall have been fully paid. N. B. Breckenridge alone appealed from the judgment.

The record shows that two-thirds of the land in controversy was the property of Mrs. Mabel Z. Breckenridge, and that her only son had inherited the same subject to a one-third life estate in N. B. Breckenridge. Mabel Z. Breckenridge, who was the daughter of Alexander W. Breckenridge, was married to N. B. Breckenridge, who was not related to her although bearing the same name, on June 19, 1912, and died on April 6, 1913, leaving surviving her a son, the said William Breckenridge, and her husband, N. B. Breckenridge, the father of said minor. Appellant swore in a deposition taken from him that he had caused a Mexican boy to forge the name of his wife, Mabel Z. Breckenridge, to a deed which purported to convey the land in controversy to her father, Alexander W. Breckenridge. This was done a year after her death, which occurred on April 6, 1913. On June 15, 1912, N. B. Breckenridge, who owned the land in controversy, conveyed the same by warranty deed to his wife, Mabel

Z. Breckenridge. She owned the land at her death. When the trial was had, the minor son was 12 years of age, having been born in 1913.

[1] Appellant, through propositions 1, 2, and 3, contends that the court erred in not finding the the property conveyed by him to his wife was the community estate of himself and wife instead of her separate property. These propositions are based on the claim that his minor son did not allege that the property was the separate estate of his mother and did not prove that it was her separate estate. The pleadings of the minor set out that he had inherited the property from his mother, and that his father had inherited a one-third life estate in the property, which could only have been true on the basis of the property being the separate estate of the mother. However, it was unnecessary to allege that the property was the separate estate of the deceased mother, but in the action of trespass to try title, the minor could prove that the property was the separate estate of his mother, and when he showed that the property had been conveyed by his father to his mother that impressed upon it the character of the separate property of his mother. Higgins v. Johnson, 20 Tex. 389, 70 Am. Dec. 394; Story v. Marshall, 24 Tex. 305, 76 Am. Dec. 106; Brown v. Brown, 61 Tex. 56; Hunter v. Hunter (Tex. Civ. App.) 45 S. W. 820; Mann v. White (Tex. Civ. App.) 236 S. W. 783.

[2] As said by Judge Wheeler in Story v. Marshall, 24 Tex. 305, 76 Am. Dec. 106:

"In the absence of any evidence of intention, outside of the deed, it must be taken as evidencing the intention which, upon its face, it imports; that is, to convey to the wife the estate of the husband, in the property. It must have been intended to have some operation upon the estate of the grantor; and that must be taken to have been, to change the estate from community, into separate property of the wife, in the absence of evidence of any other or different purpose, in the making of the conveyance. To deny it that effect, would be to render the deed wholly inoperative and void. The grantor could have made an effectual conveyance to a stranger, of the whole estate; and it is not perceived that there is any legal impediment to his conveying to his wife his interest, thereby investing her with the whole estate."

That decision has never been questioned, but has been approved in a number of instances. The mere fact that a husband makes a deed to his wife to community estate impresses it with the character of the wife's separate estate, without a formal recitation of that fact in the conveyance. As said by the Amarillo Court of Civil Appeals in Mann v. White, herein cited:

"It has long been held that when the husband conveys land to the wife, belonging to the community, with the title in his name, it is to be presumed that the land thereby becomes the separate property of the wife."

If the land was the separate property of the husband when he conveyed it to his wife, then the presumption would arise that he intended to make a gift of the property to his wife and it would become her separate property. Higgins v. Johnson, herein cited; Belcher Land Co. v. Barfield (Tex. Civ. App.) 244 S. W. 395. In the case last named the deed was to separate property of the husband, and it was held that the deed converted the property into the separate estate of the wife.

[3] There was sufficient evidence of delivery of a deed from the husband to the wife. It was promptly acknowledged and promptly recorded. Presumption of delivery arises from registration. Like all presumptions, it may be destroyed by evidence; but no evidence has been offered in this case tending to rebut the presumption. Dev. Real Est. § 290a; Newton v. Emerson, 18 S. W. 348, 66 Tex. 142; McCartney v. McCartney (Tex. Civ. App.) 53 S. W. 388. As said by Chief Justice Stayton in Newton v. Emerson, cited:

"After being acknowledged and certified, the paper was deposited with the proper officer, that he might place it upon the public record, which, of itself, has often been held to operate a constructive delivery, which is the final act in the transmission of title by deed."

[4, 5] The deed from N. B. Breckenridge to his wife was dated June 15, 1912, and appellant swore that he married some time in that month. The father, A. W. Breckenridge, was uncertain as to the date, but thought it might have been June 19, 1912, after the date of the deed. If that be true, then the property was acquired by purchase or gift by Mabel Z. Breckenridge before her marriage, and consequently was her separate estate. A valuable consideration is recited in the deed. For more than 10 years the property was regarded as that of the estate of Mabel Z. Breckenridge, and it was only after oil had been discovered on the land that appellant discovered his claim to it and he sought to dispossess his son. His proposed testimony as to it not being intended by him to convey title through this deed to Mabel Z. Breckenridge was properly excluded.

There is no reason given by appellant in his bill of exceptions for his objection to the tentative dismissal of the action as to certain parties who had intervened in the suit. No interest of appellant could have been injured by such dismissal, and there is no foundation whatever for his complaint. The first to ninth propositions, inclusive, are overruled.

[6] The evidence showed that A. W. Breckenridge by virtue of the deed to him by Mabel Z. Breckenridge, which appellant admitted was a forgery, brought about and induced by him, sold certain interests in the land, and appellant is in no position to question those transfers by A. W. Breckenridge, and is estopped to assail acts caused by his fraud and crime.

The record shows that the court refused to enter a formal order of dismissal of certain parties, although appellant prepared such order and sought to have it entered. Afterwards certain of the parties were permitted to have their rights adjudicated, and appellant and his counsel, although knowing what was being done, made no objection to the action of the court in adjudicating the rights of those who asked for reinstatement of their causes and the adjudication thereof. They considered the items of the judgment, but made no objection to them.

There was no objection at that time to the facts found by the court and made a part of the judgment, and they are sustained by the statement of facts. It is sufficiently clear that the amount of the royalties from gas and oil on surveys 460 and 771 was $20,842.80, and that appellant was only entitled to one-third of that sum, namely, $6,947.60, and he admitted in court that he had received $8,915.80, and it followed, as found by the court, that he was indebted to the estate of his minor son in the sum of $8,915.80.

[7] Prior to the death of Mabel Z. Breckenridge, no oil or gas had been discovered on the land owned by her, and when she died her husband inherited a one-third life estate in the use of the land. Under the law he obtained only a right to a use in one-third of the estate, and to no part of the corpus which became the property of the minor heir, William Breckenridge. Appellant had no right or title to the proceeds arising from the minerals in the land, which were a part of the body of the estate and belonged to the minor. This question was ably and exhaustively considered by Chief Justice Gaines, in the case of Swayne v. Lone Acre Oil Co., 86 S. W. 740, 98 Tex. 597, 69 L. R. A. 986, 8 Ann. Cas. 1117, and in summing up the court held:

"The right of the life tenant is to the use and not to the corpus of the estate; and where his title is in an undivided interest and not in the whole of the land and a sale is ordered for partition, his right in the proceedings is not a part proportionate to the undivided interest in which he has the life estate, but to the interest on that part as long as the life estate may continue to exist."

In other words, in this suit appellant was not entitled to a gross sum arising from the oil and gas in the lands, but only to have one-third of the net income arising from the sale of such oil and gas set apart and the interest on the same paid annually to him; the oil and gas being a part of the corpus of the estate which cannot be diverted from the final ownership of him who holds the entire estate. Speaking on this subject in the Kentucky case of Crain v. West, 229 S. W. 51, 191 Ky. 1, after reviewing a number of cases, Chief Justice Hurt said:

"In those cases it was held that, inasmuch as the life tenant had no right to open the new mines nor to the products of the mines when opened, and the remaindermen had no right to the use of the land during the life tenancy, the life tenant was entitled to the interest on or income or use of the royalties during life, but the corpus of the royalties, like the land from which it came, was the property of the remaindermen, and should be preserved for them."

To the same effect, Meredith v. Meredith, 235 S. W. 757, 193 Ky. 192.

The court put the doctrine stated in the cases cited into the judgment herein, and in order to preserve the corpus of the estate to the minor, to whom it belongs, appointed a trustee to take charge of such property and pay the interest to said appellant that may arise from his part of said minerals.

There are several things found in this record unexplained, but which would not alter the decision of the cause; for instance, the reason for the deed from appellant to Mabel Z. Breckenridge, and more especially why a forgery was deliberately concocted and executed by appellant purporting to convey estate in the land of his wife to her father. No explanation is attempted of this forgery, and apparently it was an act of depravity without any pith or point to it. It was admitted by appellant, and merely serves to indicate the character of the man who desired to deprive his son of his means of support.

The judgment is affirmed.