## HICKMAN v. HICKMAN. (No. 831.)

Court of Civil Appeals of Texas. Waco.
Sept. 19, 1929.

Rehearing Denied Oct. 24, 1929.

See, also, 10 S.W.(2d) 738.

L. A. Wicks, of Ralls, for appellant.

J. M. Moore and J. K. Russell, both of Cleburne, for appellee.

STANFORD, J. This suit was filed by appellee against appellant for a divorce and to recover an undivided one-half interest in 240 acres of land in Bailey county, Tex. The case was tried before the court without a jury, and judgment rendered for appellee granting her the relief sought. The trial court filed findings of fact and conclusions of law. There is also a statement of facts with the record. Appellant has duly appealed, and filed in this court an exhaustive and able brief, challenging the sufficiency of the pleadings and evidence to entitle appellee to a decree of divorce, and also the sufficiency of the evidence to entitle her to a recovery of a half interest in the land. This is the second appeal, the first being reported in 10

S.W.(2d) 738. We have examined appellee's pleadings, and without undertaking to set same out, think they are sufficient as a basis for the judgment rendered.

By many assignments and propositions based thereon, appellant contends the evidence was insufficient to authorize the judgment rendered. Appellee testified, in substance, that she and appellant were married in Crosby county about December 25, 1918, and lived together until January 3, 1927. For several years after their marriage, they lived in Crosby county, a part of the time living with the family of appellant's father, and a part of the time with the family of appellee's father, usually living in one room, and moving from place to place, appellant doing a little farming, but manifesting but little interest in it. Then they moved to Cleburne in Johnson county, where they lived until their separation. The record indicates that during the eight years they lived together, appellant was indifferent and manifested no desire to provide a home or a support for appellee; that a good part of the time they were moving about, living with relatives, and that while they lived in Cleburne the last few years before their separation, when not living with some relative, they moved frequently from place to place, and often lived in one or two rooms with another family; and during said last few years before the separation in Cleburne, appellee procured and had employment, but appellant, the greater part of the time, had no employment, and made but little effort, if any, to get employment. The evidence is sufficient to show that appellant not only failed to make a support for his wife, but failed to make an effort to so do. The evidence is sufficient to show that appellant was a very profane man, and a man of ungovernable temper; that he often cursed appellee and threatened to knock her down, beat her, etc.; that he frequently called appellee a d——n fool; that during a spell of sickness, when appellee was confined to her bed for two weeks and it was necessary for some one to sit up at night with appellee to wait on her and give medicine, appellant manifested no sympathy or interest, and not only refused to wait on appellee himself or procure a nurse or some one else to do so, but would become very angry and insulting to appellee's friends who volunteered to wait on her at night, because it was necessary to keep the light on, which interfered with his sleep. The record shows further that after this suit had been filed, while appellant was sitting in his car on the public square in Cleburne, appellee approached him for the purpose of talking to him, whereupon appellant became very angry and kicked his car door open and against appellee, knocking her back against another car, and he then rapidly drove away. The evidence is sufficient to show that appellant, without provocation, on another occasion, planted himself in their doorway and dared appellee to attempt to pass through, threatening to knock her down if she did. The evidence is not only sufficient to show the above-mentioned acts of cruelty, and many more of a similar nature, but the evidence is sufficient to show that several years before their separation, in addition to such acts of abuse and downright cruelty, appellant began a series of studied vexations and deliberate insults toward appellee, such as would, and doubtless were intended to, annoy, embarrass, and humiliate appellee. It would serve no useful purpose to review here, and so place in the permanent court records of the country, the evidence of the numerous acts and conduct of appellant designed to tantalize, annoy, and humiliate appellee, but sufficient to say that in our opinion these acts alone were sufficient to authorize the trial court to award the decree for divorce. And the evidence is sufficient to show that as time went on, appellant grew worse in his harsh and cruel conduct and deliberate insults toward appellee, until her health became affected. Among other things, the court found: "That by reason of the conduct of the defendant toward the plaintiff, her health was affected, as it made her nervous and sick, and that such conduct renders their further living together as man and wife unbearable and insupportable. The court finds as a matter of fact that the defendant would not live with plaintiff as his wife, as he testified that he would not."

We recognize the rule that in a divorce suit the evidence must be "full and satisfactory," not only to the trial court, but also to the appellate court, or a decree of divorce will not be permitted to stand. Article 4632, Rev. St. 1925; Blake v. Blake (Tex. Civ. App.) 263 S. W. 1075; De Fierros v. Fierros (Tex. Civ. App.) 154 S. W. 1067; Smith v. Smith (Tex. Civ. App.) 218 S. W. 602. However, we think, as the trial court observes the manner and general deportment of witnesses during the trial, and hence is better able to weigh the evidence, the appellate court should give much deference to the judgment of the trial court in passing on the credibility of witnesses, even in a divorce suit. The weight of the evidence is for the trial court. Rivers v. Rivers (Tex. Civ. App.) 133 S. W. 524; Duffer v. Duffer (Tex. Civ. App.) 144 S. W. 354; Wagley v. Wagley (Tex. Civ. App.) 230 S. W. 493.

While we have not attempted to set out all of the evidence tending to support the judgment of the trial court granting the divorce, we think the above is sufficiently full and satisfactory to authorize the judgment awarding appellee the divorce. Lefevre v. Lefevre (Tex. Civ. App.) 205 S. W. 842; Dawson v. Dawson, 63 Tex. Civ. App. 168, 132 S. W. 379; McNabb v. McNabb (Tex. Civ. App.) 207 S. W. 129; Caywood v. Caywood

(Tex. Civ. App.) 290 S. W. 889; Steele v. Steele (Tex. Civ. App.) 257 S. W. 300; Jones v. Jones, 60 Tex. 460; Sheffield v. Sheffield, 3 Tex. 87. In the last case above cited, our Supreme Court said: "It cannot be doubted that a series of studied vexations, and deliberate insults and provocations would, under our statute, be sufficient cause for divorce, without apprehension of personal violence, or bodily hurt. This would constitute the intolerable treatment contemplated by the statute." In the case of Jones v. Jones, above, our Supreme Court said: "Our statute differs from those of a majority of the states in respect to the cruel treatment which will authorize a divorce. It does not confine such treatment to bodily harm, or threats of the same, and properly includes within the meaning of 'excesses, cruel treatment and outrages,' insults or injuries to the mind or the heart. * * * And why should it not be so held? What are wounds to the person as compared to those that affect the mind? The former may be healed; the latter endure for a lifetime." A similar construction is given our statute in Dawson v. Dawson, cited above. We overrule all of appellant's propositions questioning the sufficiency of the evidence to support the judgment for the divorce.

Under other assignments and propositions based thereon, appellant contends, in effect, that the evidence was insufficient to support the finding of fact by the court that defendant intended to give plaintiff any part of the Bailey county lands; and that the evidence was insufficient to support the judgment awarding plaintiff a one-half interest in the 240 acres of land. Appellee's evidence, in part, bearing upon the issue here involved, is as follows: "At the time Frank Hickman and I married he owned 100 acres of land. As to what Frank Hickman said to me with reference to the 100 acres of land before we married, he told me that if I would marry him he would give me half of that 100 acres of land and we would improve it and he would build me a nice home on it, and that I should have half interest in everything he had. He told me that a number of times. I believed what he said about that. We even talked of improving it and everything. This 100 acres of land was raw land. * * * The agreement I had with Frank Hickman prior to our marriage relative to him making me a gift of the property, or anything of that sort, in consideration of our marriage, was not in writing. It was an oral agreement. * * * After we married we traded this 100 acres in on 320 acres in Bailey county and paid $1600.00 difference. We did not pay $1600.00 in cash, but gave two notes for $800.00 each."

The record shows conclusively that the 100 acres as well as the 320 acres for which it was exchanged was unimproved raw land, and was never improved or occupied by appellant and appellee, or either of them; that there was a contract for the exchange of said lands executed by Frank Hickman and wife, Nell Hickman, and Monroe Buckley, attorney in fact for Fidelity Trust Company; that the deed conveying the 100 acres was executed by both Frank Hickman and wife, Nell Hickman; that the two notes for $800 each, given for the difference in the trade by Hickman and wife to the Fidelity Trust Company, were signed by both Frank Hickman and wife, Nell Hickman; that the deed by the Fidelity Trust Company conveyed the 320 acres to both Frank Hickman and wife, Nell Hickman. Appellee, Nell Hickman, was not present at Amarillo at the time the land deal was closed and deeds delivered, but was at Crosbyton, where she and her husband then lived. Appellee testified, in effect, that when her husband started to Amarillo to close the land deal, he told her he was going to have the deed conveying the 320 acres made to both of them so she would own a half interest, and that when he returned home from Amarillo with the deed to the 320 acres of land, he gave her said deed and repeatedly called her attention to the fact that said land was conveyed to both of them, and that he had said deed made to both because he intended she should own a half interest. There is some corroborative evidence that after this deed was delivered, appellant considered that appellee owned a half interest in the 320 acres. Appellee testified further that she and her husband made the money used in paying the first $800 vendor's lien note, and that when the second $800 note fell due, she and her husband sold 80 acres of the 320 acres and thereby procured the money to pay said note. The court found, in substance, that the deed conveying the 320 acres to Hickman and wife was so made with the intention on the part of appellant, Hickman, to give his wife, Nell Hickman, a half interest in said land. The findings of fact in a trial before the court are as binding on the appellate court as findings by a jury, and where there is evidence to support such findings by either the court or jury, the appellate court has no right to disturb such findings. Kelley v. Ward, 94 Tex. 289, 60 S. W. 311; Wells Fargo & Co. Exp. v. Boyle, 100 Tex. 577, 102 S. W. 107; Kelsey v. Collins, 49 Tex. Civ. App. 230, 108 S. W. 793 (error refused); Farmers' & Merchants' Gin Co. v. Simmons (Tex. Civ. App.) 178 S. W. 621; Dudley & Orr v. Hawkins (Tex. Civ. App.) 183 S. W. 776 (error refused).

The evidence, we think, in this case is ample to sustain the finding of the court that in taking the deed from the Fidelity Trust Company to the 320 acres of land, the appellant had same made to himself and wife, Nell Hickman, for the purpose and with the intention on his part of giving his said wife a half interest in same. If such was the intention of appellant, then said deed vested in appellee a half interest in said land, Cauble v.

Beaver-Electra Refining Co., 115 Tex. 1, 274 S. W. 120; Breckenridge v. Coffield (Tex. Civ. App.) 283 S. W. 310; and it is wholly immaterial whether such land was paid for with the separate funds of appellant or with the community funds of appellant and appellee, or with some or both. Neither is it material when appellant formed the intention of making such gift, whether before or after marriage. It is true that any pre-nuptial oral agreement to make such gift was not binding and could not have been enforced as long as executory, but after such agreement was carried out, it became executed and was legally effective. Evans et al. v. Ingram et al. (Tex. Civ. App.) 288 S. W. 494, and cases there cited. The deed conveying the 320 acres to appellant and appellee was made February 27, 1923, and was filed for record by appellant April 18, 1923. Appellant and appellee separated January 3, 1927. Appellant never expressed any dissatisfaction with the deed nor made any contention that appellee did not own a half interest in said land until after this suit was filed. We overrule all of appellant's contentions challenging the sufficiency of the evidence to support the judgment of the court awarding appellee one-half of the 240 acres of land.

There are a number of propositions contending the court erred in overruling certain special exceptions, and in the admission of certain evidence. These we have not discussed, but have considered. We have considered all of appellant's assignments, and find no reversible error.

The judgment is affirmed.