## JOY v. SACHS.
### No. 11870.

Court of Civil Appeals of Texas. Dallas.
Jan. 25, 1936.

Dissenting Opinion Jan. 29, 1936.

Rehearing Denied Feb. 22, 1936.

Bond & Porter, of Terrell, for appellant.
N. B. Halporn, of Dallas, for appellee.

LOONEY, Justice.

Both in his individual capacity and as executor of the estate of his deceased wife, M. A. Joy, appellant brought this suit against Guy S. Sachs, appellee, to recover a diamond finger ring, and, in the alternative, its value, alleged to be $1,000. Appellant, in substance, alleged that the ring was his separate property, or, if not, that it belonged to the community of himself and deceased wife, Mrs. E. G. Joy; that on or about November 1, 1931, his wife borrowed from appellee the sum of $300, executed a note evidencing the indebtedness, and a chattel mortgage on the ring in question, delivered possession of same to appellee, as security for the note; that said transaction was without the knowledge or consent of appellant; that the money was not borrowed by his wife or the mortgage given to enable her to purchase necessaries, as appellant furnished all means and necessaries required for her maintenance and comfort; hence the entire transaction between appellee and Mrs. Joy was void; wherefore appellant sought judgment as before stated.

Appellee answered that the diamond ring in question was the separate property of Mrs. Joy, and that she was authorized to mortgage same to secure payment of the

note and, further, that she was estopped by her conduct and representations to deny that the ring was owned in her separate right, and that, for the same reason, appellant, as her executor, is estopped to deny such fact; wherefore appellee prayed that appellant take nothing by reason of his suit, and that the lien on the ring be foreclosed and the same sold, for the satisfaction of said note and interest.

The case was tried without a jury, resulting in judgment in favor of appellee, to the effect that appellant take nothing, and foreclosing appellee's lien on the ring, and ordering same sold for satisfaction of the debt, from which this appeal was taken.

The court filed findings of fact and conclusions of law, finding, among other things, that the ring in question belonged to Mrs. E. G. Joy in her own separate right, that she had the legal right to create the chattel mortgage lien on the same, as security for the payment of the debt, and that appellee was entitled to have his lien foreclosed, and the property sold in satisfaction of the debt. The court also made findings and conclusions favorable to appellee on the issue of estoppel, but we do not deem it necessary to give further notice to that issue.

The finding and conclusion of the trial court on the issue as to the ownership of the ring at the time Mrs. Joy executed the mortgage, and as to appellee's right to have the lien foreclosed, are vigorously assailed by appellant, his contention being that the evidence conclusively established the fact that the ring was not the separate property of Mrs. Joy, but belonged to the community estate of himself and deceased wife. The above, we think, presents the controlling question for decision, and its determination depends upon the sufficiency of the evidence to establish a gift of the ring by appellant to his wife.

As the testimony of appellant is the only evidence adduced on the issue, the same is set out in full, as follows: Appellant testified that he and his deceased wife were married about 41 years, was then questioned by his attorney, and answered as follows:

"Q. Mr. Joy: Were you the owner of a diamond ring, as testified about and described in this law suit? A. Yes, sir. * * *

"Q. When and where and how did you secure the ring? A. Bought it in Memphis, Tennessee, when Mrs. Joy and I were stopping at a hotel. * * *

"Q. Now, did Mrs. Joy possess that ring, that is to say, was it given to her as her separate property or part of the estate like any other property you had? A. Part of the estate, together with numerous other diamonds that she had and I had—that we had at different times.

"Q. Did you ever give Mrs. Joy permission to sell or hypothecate this ring to this man, the defendant in this case? A. I did not."

On cross-examination, the following questions were asked and answers given:

"Q. Mr. Joy: You stated you got this ring some (35) thirty-five years ago, approximately? A. Yes, sir.

"Q. When did you give this ring to Mrs. Joy? A. I didn't give it to her.

"Q. When did it get into her possession? A. She put it on when I bought it, she put it on and wore it usually, not all the time. She had quite a number of rings, and she wore it usually together with others, changing and interchanging.

"Q. When is the first time she started wearing it? A. When I bought it.

"Q. That is approximately thirty-five years ago? A. Something like that.

"Q. Can you remember the exact verbage thirty-five years, that you said, 'Take it, and it goes into the estate.' You said that awhile ago? A. I didn't make any such statement. I bought it, and paid for it, and I put it on her finger, and as I said, during our married life from that time on, she wore it off and on from time to time, together with other rings.

"Q. You didn't give it to her at that time? A. No.

"Q. She put it on and wore it? A. Yes."

The witness testified that the first he knew of his wife's transactions with appellee was some time after her death; that his housekeeper, finding an instrument relating to the matter, called same to his attention; he was then asked: "Didn't you miss seeing her wearing the ring during that nine months, during the nine months from the time she got the loan until the time of her death, which was a period of approximately nine months? A. I don't recall, because, as I stated, she changed her jewelry from time to time, wore this ring and that one, differently; I don't recall anything about the particular jewels that she wore at any particular time."

■ Stripped of conclusions and surplusage, the testimony of appellant is to the effect that about 5 or 6 years after their marriage, while he and his wife were stopping at a hotel in Memphis, Tenn., he purchased the ring in question, paying for it with money acquired during their marriage, that he put the ring on his wife's finger at the time it was purchased, which was about 35 years prior to her death, and that afterwards, during their married life, she possessed and wore the ring as she chose.

This evidence, in our opinion, amply supports the findings and conclusions of the trial court, and they are adopted as our conclusions on the issue.

■ The common-law rule, to the effect that husband and wife are one person, that there could be no contracts, conveyances, or gifts between them, that jewelry and wearing apparel received from the husband by the wife during coverture remained his personal property, with the right of disposition, is not and never has been the rule of law in this state. 23 Tex.Jur. p. 155, § 125.

■ In view of the marital relationship, especially in view of the husband's powers of management, control, and disposition of community property, only slight evidence is required to support the presumption of a gift from husband to wife, such as is evidenced by deed from him, conveying property to his wife; the taking by him from another of a deed conveying property to her; and the deposit by him of money in her name, each of such acts, without more ado, raises the presumption of a gift and justifies the conclusion that it was the intention of the husband to make the property conveyed and the money deposited the separate property of the wife. See German Ins. Co. v. Hunter (Tex.Civ.App.) 32 S.W. 344; Saylor v. Saylor (Tex.Civ.App.) 20 S. W.(2d) 229; Hickman v. Hickman (Tex. Civ.App.) 20 S.W.(2d) 1073.

The case of Collins v. Austin (Tex.Civ. App.) 32 S.W.(2d) 912, by the Beaumont Court (writ refused), in our opinion, is directly in point. In that case, on facts very similar but less potent, the court held that jewelry bestowed by the husband on the wife, and possessed by her about 3 years, was a gift, vested separate title in her, and that a mortgage given to secure a loan from the bank, made over the husband's protest and without his consent, was valid and enforceable. The doctrine of that case, in our opinion, rules the instant case.

For reasons stated, the judgment of the lower court is affirmed.

Affirmed.

BOND, Justice (dissenting).

The controlling question in this controversy is, Who owned the property involved at the time it was mortgaged? If it belonged to the separate estate of Mrs. M. A. Joy, then she had a legal right to mortgage it for the debt she had contracted, Collins v. Austin (Tex.Civ.App.) 32 S.W.(2d) 912; on the other hand, if it was at that time community property, it is conceded that she had no such right, there being no evidence of the existence of those conditions which confer upon the wife the right to control and dispose of community property.

The testimony is not conflicting upon the question involved. The proof shows that, when originally acquired, the diamond ring was purchased with funds belonging to the community, and was at that time community property. It remained community property, unless the uncontradicted testimony of the appellant had the legal effect of passing the community title to that of the separate estate of the wife. That such was not Mr. Joy's purpose is manifest from his testimony: Mr. Joy testified that he did not give the ring to his wife; that, when he purchased it, about 35 years ago, he put it on his wife's finger, or she herself put it on, and wore it "usually not all the time. She had quite a number of rings and she wore it usually together with others, changing and interchanging."

The writer is of the opinion that there is nothing inconsistent in the possession of the wife with ownership by the husband, nor does the act and conduct of the husband change the estate from community to the separate property of the wife; indeed, for such purposes, the wife is the logical custodian of the diamond ring, as she is of many other adornments of person and of home suitable for the station she occupies, the queen of the realm—home. This does not mean, however, that the husband is not equally interested and shares in the benefits of such adornments, or that he relinquished his community interest.

The right of the wife, under our laws, to hold and possess property is coequal with that of the husband. Carter v. Bolin et al. (Tex.Civ.App.) 30 S.W. 1084. The connubial partnership is a real partnership, so far as title and beneficial rights are con-

cerned. The beneficiary title of each to the community is identical. Burnham et al. v. Hardy Oil Co. et al., 108 Tex. 555, 195 S.W. 1139; Davis v. Davis (Tex.Civ.App.) 186 S.W. 775. If the legal title be in any way vested in one of the spouses, the possession and holding is nevertheless for the benefit of both. Their interest runs with the estate and becomes inseparable only on the dissolution of the marriage. Accordingly, exclusive possession of community property, either by the husband or wife, does not show ownership out of the community. Thus, the possession of one is that of the other, and neither the husband nor the wife can assert title adversely to the other. Possession, therefore, being no evidence whatever of the possessor's title to community, the status of the property in question must relate back to, and have its inception as of, the date it was purchased. Jackson et al. v. Piper et al. (Tex.Civ.App.) 28 S.W.(2d) 240; Jackson v. Jackson (Tex.Civ.App.) 258 S.W. 231.

The presumption arising from the acquisition of property during marriage that it is community property, and that it remains such during the continuation of the marriage status, is very strong, and the most clear and satisfactory evidence will be required to overcome it. Wood v. Dean (Tex. Civ.App.) 155 S.W. 363; Edelstein v. Brown et al. (Tex.Civ.App.) 95 S.W. 1126; Phillips et al. v. Palmer et al., 56 Tex.Civ. App. 91, 120 S.W. 911; Watkins v. Watkins (Tex.Civ.App.) 119 S.W. 145. The burden of establishing the separate character of property, when the presumption obtains, is upon him who asserts it. Hughes v. Robinson (Tex.Civ.App.) 214 S.W. 946. In cases of personal property where, by law, no written conveyance is required, there can be no presumption that such is the wife's separate property. The purchasing of the ring in this case with community funds and thereafter turning it over to the wife and she retaining possession thereof is clearly not inconsistent with the community; therefore, if the husband and wife, in dealing with the property, was not inconsistent with the community estate, it follows, of course, that there was no gift, since no intention could be inferred from such facts. Where property is purchased with community funds and by written instrument conveyed to the wife, there is no presumption that it was to become the wife's separate estate by gift from the husband. Schwartzman et ux. v. Cabell Sheriff et al. (Tex.Civ.App.) 49 S.W. 113.

It is not an open question in this state that a husband or wife may bestow upon the other a gift of property, and the property so acquired by the wife becomes her separate property; but the presumption of community, under our statute, makes a prima facie case that property in the possession of either the husband or wife is of that estate and will prevail in the absence of rebutting evidence; the rebutting evidence must do more than raise a strong probability of the separate character of the property. Albrecht v. Albrecht et al. (Tex.Civ.App.) 35 S.W. 1076; J. N. Kimberlin et al. v. H. B. Westerman et al., 75 Tex. 127, 12 S.W. 978; Deposit Bank of Owensboro v. Daviess County Court (Ky.) 12 S.W. 930; Jennie McDougal et al. v. Robert H. Bradford, 80 Tex. 558, 16 S.W. 619.

In the case of Hirsch v. Howell et ux. (Tex.Civ.App.) 60 S.W. 887, the question involved was whether property was the separate property of the wife or community property. This court, speaking through Chief Justice Rainey, said, in effect, that strong testimony of an intention to make community property the separate property of the wife is necessary to prevent the legal presumption that it was community property.

In the case of Sweeney v. Taylor Bros. et al., 41 Tex.Civ.App. 365, 92 S.W. 442, 444, Taylor Bros. sought to foreclose a chattel mortgage executed by the wife upon a ring purchased by her with community funds. The ring was in possession of appellant Sweeney at the time suit was brought, he having purchased it of the husband. The question was raised as to whether the ring was the separate property of the wife or community property. The Austin Court of Appeals said: "If the defendant Addie Humphreys was the wife of Abe Humphreys at the time she executed the mortgage, its registration was not constructive notice to appellant; no facts being alleged or proven which would make said mortgage valid as between the parties thereto. If purchased by the wife during coverture, the ring became community property, there being no evidence that it was purchased with her separate funds, and the husband had the right to sell or pledge it to appellant." So, in the instant case, there is no evidence of a gift as to make the diamond ring the separate property of the wife; but, on the contrary, the only testimony in the case is that of the husband, who testified: "He did not give it to his wife";

then, how can it be said that the community estate is changed to that of the separate property of the wife, in the absence of rebutting evidence?

In the case of Collins et al. v. Austin, State Com'r of Banking (Tex.Civ.App.) 32 S.W.(2d) 912, 913, which is cited in the majority opinion as directly in point, one of the material questions involved was whether diamonds were given by the husband to the wife as to make them her separate property. The distinctive feature in that case is that the issue was controverted; Mr. and Mrs. Collins were separated, living apart, and conducting their own separate businesses. Mr. Collins was engaged in the banking business and Mrs. Collins in the mercantile business. Mr. Collins testified that he did not give the diamonds to Mrs. Collins as her separate property, that he bought and paid for them with community funds, and that he claimed them at all times since their purchases as a part of the community estate, allowing his wife only to use them as she had of other property belonging to the community. "On this issue," says the Texarkana Court of Appeals, "Mrs. Collins testified that Mr. Collins gave her the diamonds as he did her wearing apparel." The trial court determined the conflicting issue raised by the testimony of Mr. and Mrs. Collins, and found in line with the testimony of Mrs. Collins,—that Mr. Collins gave her the diamonds. The appellate court said: "We think the record as a whole raised the issue of separate ownership, and even if appellants are correct in their construction of the trial court's conclusions of fact on this issue, yet in support of the judgment it would be our duty to resolve the issue against them."

Manifestly, our Supreme Court, in refusing a writ of error in the Collins Case, supra, do not hold that "jewelry bestowed by the husband on the wife, and possessed by her about three years, was a gift, vested separate title in her." The opinion merely is the pronouncement of a well-established rule that fact findings of a trial court on controverted testimony are as binding on the appellate court as findings by a jury; and, where there is evidence to support such findings, by either the court or jury, the appellate court has no right to disturb such findings. Mrs. M. A. Kelley et al. v. J. C. Ward, 94 Tex. 289, 60 S.W. 311; Wells Fargo & Co. Express v. P. A. Boyle, 100 Tex. 577, 102 S.W. 107; Kelsey v. Collins et al., 49 Tex.Civ.App. 230, 108 S.W. 793 (error refused).

In the Collins Case, as in the case at bar, the testimony of the husband reveals the community status of the property at the time it was mortgaged by the wife; but, in the cited case, the husband and wife were separated, and the wife was left in possession of the diamonds, and she testified that her husband "gave her the diamonds." In the instant case, Mr. and Mrs. Joy were living together, and there is no controverting evidence of the community status of the property established by Mr. Joy's testimony.

To sustain the judgment in this case, courts must hold that all property which the husband purchases with community funds and turns over to the wife and she retains possession thereof changes the title of the property from community to that of the separate estate of the wife. To this the writer is unable to subscribe. Such is too far reaching, calculated to disturb the laws of descent and distribution of property acquired during marriage.

Gifts between the husband or wife ought not be admitted except upon clear and satisfactory evidence that the title to the property was divested out of the doner and vested in the donee. Such transactions should, for reasons that readily suggest themselves, be subjected to the closest scrutiny, and not sustained except upon the clearest proof of their bona fides. The community interest in property is a property right, and cannot be altered by the fact that the wife had the property in her possession; the husband does not forfeit his community rights by not asserting claim to or demand for the possession. Odem v. Leahy (Tex.Civ.App.) 264 S.W. 218.

The writer is unable to accord to the testimony of the appellant as raising an issue of fact for the determination of the court or that the acts and conduct of the husband and wife, in dealing with the property, are inconsistent with the community. As stated above, the uncontradicted testimony is that Mr. Joy did not intend to bestow upon his wife the right of a separate estate to the diamond involved in this suit; but, on the contrary, he testified positively that he did not give it to her; allowed her only to use and possess it as she chose. Such, undoubtedly, is not inconsistent with his ownership in the community. What more could a husband do? Certainly, perhaps, safely he should not have done less.

The case having been fully developed, the writter is of the opinion that the judgment should be reversed and here rendered in

favor of the appellant for the title and possession of the diamond ring, with instructions to the trial court that, if the ring is not forthcoming, its value be established, and render judgment for its value on trial of that issue.