## LIDDELL v. LIDDELL.
### No. 8447.

Court of Civil Appeals of Texas. San Antonio.
May 28, 1930.

Criss & Brown and John C. Myrick, all of Harlingen, for appellant.

Carter & Stiernberg, of Harlingen, for appellee.

SMITH, J.

This is a divorce case. In the judgment appealed from a decree of divorce was granted to Jessie Kelsey Liddell, appellee herein, against her husband, Newton Styles Liddell, appellant herein, as was also the exclusive custody and maintenance of a seven year old son of the parties. An estate of the net value of approximately $100,000 was partitioned between the parties, in the proportion of ap-

proximately $55,000 to the wife and $45,000 to the husband. The husband complains in this appeal of the decree in toto, of the divorce, of the disposition of the child, and of the property adjustment. The cause was tried by the court without a jury, and upon testimony which covers 577 pages in the record the trial judge rendered a general judgment, with no separate findings of fact and conclusions of law. Upon the issue of divorce, however, the court did include in the judgment specific findings that appellant "has been guilty of excesses, cruel treatment and outrages toward the plaintiff of such a nature as to render their living together insupportable, and that he continually neglected her in her sickness, and continually occasioned to her mental distress and wounded her feelings and pride, and that his acts and neglect were studied and were intended to, and did, actually seriously impair her health." And upon the question of the care and custody of the child the court also specifically found "that it would be right and proper to give the custody and education of said child to the mother, having due regard for the prudence and ability of the parents, and of the age and sex of said child."

As the trial petition covers 17 typewritten pages, and the statement of facts 577 pages, it obviously is impracticable to undertake to set out in detail the complaints embraced in the pleadings and evidence upon which the trial judge arrived at the judgment appealed from. It is as novel as it is refreshing and gratifying that in all of the criminations and recriminations of the parties neither charges the other with immorality or infidelity. Both appear to be workers in their respective churches; neither apparently having a very high regard or profound respect or much toleration, however, for the other's church affiliation. It is impossible to appraise the degree of responsibility of this lack of mutual respect of each other's religious attachments for the disruption of the nuptial accord. It is obvious, however, that this element of discord entered deeply into the relations of the parties, and poisoned those relations, as such disagreements always will do when unrestrained.

No material questions of law are presented in the appeal; the controlling issues are of fact, which the trial court has resolved against appellant.

■ It is contended by appellant that material corroboration of the testimony of the complaining spouse is essential to warrant a decree of divorce, that appellee was not corroborated in her testimony in this case against appellant, and that the decree in her favor is therefore without support, and should be set aside. While the statute is silent upon the subject, it is nevertheless true that the courts have established the general rule that divorces will not be granted solely upon the testimony of the spouse seeking the decree. Such testimony must be supported by direct or circumstantial evidence, or by inferences arising from such evidence. This rule is more or less flexible, however, and is applied rigidly or liberally according to all the facts and circumstances of each case. Corroboration need not be direct or positive in every case, and in some cases very slight corroboration is sufficient to warrant a finding upon specific facts. As a rule, the degree of corroboration required must be left to the discretion of the trial court, although appellate courts will not hesitate to set aside decrees in cases of apparent abuse of that discretion. We are of the opinion, after careful scrutiny of the almost interminable statement of facts, that the testimony of appellee in support of her petition was sufficiently corroborated to warrant affirmative findings upon the issues determined below.

■ The most serious question presented in the appeal is that of whether the facts testified to by appellee, regardless of the question of corroboration, warrant the decree dissolving the bonds of matrimony which had existed for eight years between the parties; whether the difficulties arising in their marital life are apparently insuperable, and are of such nature as to render their continued union insupportable.

It is obvious from the record that those difficulties have grown up, not from any fundamental or insuperable differences between man and wife, but, as is far too often the case, from the untimely presence, the awkward interference, the apparently innocent, but none the less destructive, meddling, of their respective relatives. The very first definite incident of discord arose from the trivial question of whether the then five year old son of the parties should go out on a certain Sunday morning dressed in a ready-made suit purchased for him by his mother or in one made for him by his paternal grandmother, whose somewhat prolonged visit in the household had grown irksome to appellee. This incident, grounded upon admittedly genuine but jealous affection borne the child by all the parties, provoked harsh words and spiteful conduct, to which appellee contributed her share, and the feelings thus engendered rankled without apparent restraint.

Appellee was twenty-nine years old when she married appellant, then forty-three years old. She was a graduate of the university of a sister state, where she took post graduate work, specializing in geology. At the time of her marriage she was in the employ of the Standard Oil Company, at a salary of $1,800 a year. The record indicates that she was a capable woman, of good breeding and refined sensibilities, sensible of the proprieties, susceptible to the darts and flings of injustice,

sensitive of her position and station, with fixed conceptions of the respect and consideration to which she deemed herself entitled. On the other hand, appellant was himself a man of some education, and, if he did not then possess them, he afterwards acquired commendable qualities of refinement and decency, and habits of personal conduct not questioned in this record. It is true that at the time of his marriage to appellee his business affairs were in a precarious position, and the methods by which he extricated himself therefrom are bitterly assailed on this appeal, although it is apparent that appellee was more or less aware of and condoned and profited by these methods. It is not necessary, and we are not disposed, to sit in judgment upon that phase of this controversy. It is sufficient to say that for the first few years of their married life the couple lived happily, congenially, without friction, so far as this record shows. In due course their son was born to them, became the object of their mutual affection, attentions, and care, although he is now the object of their bitterest contention.

At and prior to the marriage appellee was subject to severe periodical headaches, induced by unascertained causes. These attacks continued after her marriage, perhaps with increasing frequency, pain, and duration. Apparently they began to undermine her nervous system, requiring increasing medical care and attention, and rendering her less able to properly attend to her household duties. She charged in her pleadings and testimony that appellant did not take her condition seriously, but treated it lightly, and, instead of properly sympathizing with her and procuring sufficient medical aid and attention, criticized her for yielding to her illnesses, and in effect charged her with malingering; that during one season he failed, if not refused, to have their home sufficiently heated, so that both she and their child suffered, and their health was temporarily impaired by the resulting cold and cheerless home. In the course of numerous medical examinations her physicians concluded that her failing health was due to a diseased colon, whereas, in the face of this scientific determination, appellant took the position with her, according to her testimony, that her ailments were due to her habit of overeating, thus disclosing a lack of confidence, sympathy, and understanding. She further testified, and the trial court presumably found, that, although her physicians urged further and more thorough clinical examinations, and an operation to correct the colon trouble, her husband disapproved and refused to procure those measures.

Appellee charged appellant with penuriousness in caring for the wants, necessities, and comfort of appellee; that he refused to provide her with sufficient funds with which to keep her in suitable clothes or provide the family establishment with the essentials of a home for those occupying their position in the community; that he refused to allow her sufficient household help, upbraided her for slothfulness and inattention to her household duties, charged her with living upon his charity, insisted upon her doing the drudgery of the household, taking the position that, if she did not perform the menial tasks about the home, she would not be permitted to eat, and in fortifying that attitude summarily discharged the maid then in their service. The testimony in support of these allegations was perhaps meager, and, when tested by the bald record, unconvincing. It was corroborated in some degree by the maid, and not circumstantially denied by appellant, however, and for these reasons we are not prepared to say the trial judge exceeded his prerogative or abused his discretion in resolving the issue against appellant.

In a motion filed in limine to modify an order of the court concerning the custody of the child pending the trial, appellant set up a long list of apparently extravagant charges against appellee to show that she was wholly unequipped and unfit, and he well equipped and peculiarly fit, to have the custody, care, and control of the tender victim of their unwholesome quarrels and bickerings. In this motion appellant charged that appellee was wholly unfit to have the custody of the child, that she failed to surround or provide it with proper Christian influences or cultured atmosphere, whereby its welfare was seriously prejudiced; that she lacked the ideals of motherhood, could not intelligently discipline the child, had no concern for it, provided no proper influence for it, neglected its Christian education, did not set a good example for it; that she had bad habits of personal cleanliness, was intemperate, especially in eating, was indolent about her housework, had not a proper Christian spirit; that her influence was destructive and vicious; that early in their married life she sought to bring about an abortion of the child subsequently born to her. This motion embraced other charges not deemed necessary to set out here. Appellant exhibited it to some members of his family, and one or two neighbors had opportunity to inspect it before he filed and procured a hearing upon it. This motion and the charges in it and exhibition or circulation of it were set up by appellee as additional grounds for divorce. Upon the trial, appellant disclaimed sponsoring some of the charges, admitted the untruth of others, sought to justify those remaining. Appellee denied the truth of all of them, and other witnesses testified to facts disproving many of them. It must be presumed, in support of the judgment, that those denied were false. The making, publication, and airing of these charges under oath had the effect of corroborating much of appellee's

testimony. It had the further effect of establishing the attitude of appellant as one of contempt and disrespect for appellee, and of a total lack of confidence in her fitness as a wife and mother. To a woman of normal refinement and sensibilities such an attitude in her husband would seem intolerable, the height of cruelty. It is that character of cruelty contemplated in the statute authorizing divorcement on the ground of cruel and inhuman treatment rendering a continuation of the marital relation insupportable.

· We have omitted a recital of numerous incidents, acts, words, and attitudes which brought about the separation of the parties, and steadily and surely widened the gulf between them. Those recited and those omitted constitute a long period of nagging, of bickerings, of poutings, of spiteful words and acts, many of which, taken separately, were of themselves of no consequence, but all of which, taken together, have destroyed all the mutual affection and respect each party felt for the other in earlier days. Appellee is by no means blameless for the tragic termination of the marital venture, but the trial court has found upon sufficient evidence that the controlling fault lies upon appellant, and it therefore devolves upon this court to affirm the decree of divorce.

■ With reference 'to the adjustment of property rights, we find no sufficient cause for reversal. The burden of the care and maintenance of the child now rests upon appellee, and it is assumed that this fact, coupled with the disparity between the business opportunities, capacity, and ability of the parties, largely influenced the trial court in apportioning the property between them.

■■ We conclude, however, that the order of the court which in effect excludes appellant from contact with his son is clearly erroneous. That appellant has a deep and proper affection for his son, that he will not consciously injure or neglect him in his person or morals or cultural development, is clearly apparent from the record. This court does not believe that the custody of a child of tender years should be so parceled out as to divide the general authority thereover, but the privilege of frequent and periodical visits with their child should never be denied either parent, except in extreme cases of unfitness, and certainly this case presents no such exception. We believe from the record that the parties here have not gotten so far away from reason, fairness, and the remaining justice in the miserable situation they have brought upon themselves that they cannot agree upon a system of contact by which appellant may have reasonable opportunity to keep in touch with his son. In the meantime, however, the decree which denies him that right will be set aside, and it is ordered that appellant be

given the custody of his son from 9 o'clock in the morning of each Saturday until 6 o'clock in the afternoon of each Sunday, as well as upon such other occasions as the parties may agree upon, subject, however, to such further orders and decrees as the trial court may hereafter deem proper under changing circumstances and conditions.

As so modified, the judgment will be affirmed.