## SCANNELL v. SCANNELL.

### No. 13726.

Court of Civil Appeals of Texas. Fort Worth.

March 25, 1938.

Rehearing Denied June 3, 1938.

540

Kilgore & Rogers, of Wichita Falls, for appellant.

J. R. Wilson and Otis Nelson, both of Wichita Falls, for appellee.

SPEER, Justice.

This suit was instituted by Mrs. Ethel E. Scannell against Ernest E. Scannell in a district court of Wichita County, for divorce, custody of two minor children, a division of community property, and for injunction. The parties will carry the same designation here as in the trial court.

The record discloses that plaintiff filed her original petition on October 18, 1935; on October 25, 1935, she filed an amended petition and defendant answered and filed a cross action for divorce as against plaintiff; thereafter, on December 29, 1935, they entered into an oral agreement, to the effect that the pending suits should be abandoned; on that day they also executed a written agreement that all previous conduct complained of in the pleadings by each against the other was forgiven, and that they would resume their former marital relation, and further providing that if either should subsequently become dissatisfied, they would then make a proper division of the community property, vest in the plaintiff the custody of the children, with the defendant supporting them as the law provides, and a divorce obtained if one could be obtained in an action for that purpose.

The case was tried upon plaintiff's fourth amended petition filed July 2, 1936. In this pleading, the above matters were alleged, and that pursuant to the agreement mentioned, they did resume the marital relation on December 29, 1935, and lived together until January 3, 1936, when they permanently separated. All jurisdictional allegations are shown and that the grounds for divorce relied upon by plaintiff arose subsequent to the time they each condoned the past conduct of the other. To this amended pleading, the defendant answered with general denial, special pleas and cross action for divorce. The allegations of both were sufficient to form the basis of the introduction of testimony.

Because of issues presented here, it is necessary to say that after the final separation of the parties, plaintiff filed in another district court of Wichita County a petition for divorce, on January 30, 1936, to which action defendant plead an abatement, on account of the pending suit, filed October 18, 1935; the plea was sustained, and plaintiff filed her second amended petition in the court where her original suit was pending. A third amended petition was filed, on June 3, 1936, making Ross Robertson, Maro Oil Company, Wichita Royalty Company and Mrs. Myrtle Scannell parties defendant; the fourth amended petition was filed on the date shown, to correct the corporate name of the Maro Oil Company, previously interpleaded, so as to read Maro Company, Inc.

Allegations are made that plaintiff and defendant owned as community property certain described real estate, consisting of the home, vacant lots and an oil lease in Archer County, Texas, of the value of $12,-000.00. That the personal property consisted of an unliquidated claim against the Wichita Royalty Company, of the value of $25,000.00, certain shares of stock valued at $30,000.00, and cash of approximately $8,000.00. That since the institution of this suit, defendant sold and disposed of the shares of stock and secreted the funds received therefor, along with other cash in his possession, into accounts, and other evidences of claims available alone to himself, and had transferred much of the shares and bonds not so sold to defendants, Robertson and Maro Company, Inc., and had assigned unto defendant, Myrtle Scannell, his mother, the oil lease in Archer County, all for the purpose of cheating, wronging and defrauding plaintiff out of her community interest therein.

Further allegations are made that on about November 25, 1935, and prior to the time they undertook to again live together, they entered into an agreement, by the terms of which they would divide their community property, which agreement provided, among other things, that same was to become effective upon the approval thereof by the court, upon the trial of the divorce proceedings; that said contract was never presented to the court for approval and for that reason was ineffective; further pleading, plaintiff alleged that the separation and division of property agreement was

void, for the reason defendant had fraudulently concealed from plaintiff the truth about the existence and values of their community property, and that she was without information concerning it; that she relied upon his statements, which were false and known to him at the time to be false.

Prayer was for the appointment of a receiver to take charge of all community property, including that held by defendants, Robertson, Maro Company, Inc., the Wichita Royalty Company, and Myrtle Scannell, held by them under the fraudulent conveyances and transfers by defendant, Scannell, and to hold the same subject to the orders of the court; that the injunction theretofore issued by the court on former pleadings, restraining defendant from disposing of any part of the property, and from molesting or interfering with plaintiff or the children, be continued in effect; for the cancellation of all said fraudulent assignments and transfers; and, further, that defendant be required to pay to plaintiff alimony, and a specified amount for the maintenance and support of the children pending suit, and for judgment finally for divorce, a fair and equitable division of the property, for custody of the children and for general and special relief, including reasonable attorney's fees, to compensate counsel for representing her in the proceedings.

The defendant's answer consisted of general denial, and specially that by the terms of the property settlement, which was fairly entered into between the parties, all property rights of each had been adjusted and settled; there was special denial of all plaintiff's allegations of fraud, deceit, misrepresentations, fraudulent conveyances and assignments of community property, and that he had, pursuant to said agreement, paid to plaintiff about $1,400.00, which amount should be charged to her in any division the court should order made; that he had taken and received certain property under said property settlement contract, and that the claims of plaintiff cast a cloud upon the title thereof. He further plead that plaintiff had induced him to enter into the renewed marital relation on December 29, 1935, for the fraudulent purpose of inducing him to condone her previous misconduct and to lay a predicate for attacking the validity of the property settlement agreement.

Final prayer was for divorce upon grounds shown in his cross action, for care and custody of the children, for removal of the cloud cast upon his titles by plaintiff's action, and for a fair division of the community property, charging plaintiff with such sums as had theretofore been received by her, a confirmation of the settlement contract and for general and special relief.

A trial was had to jury on special issues submitted by the court. Upon the verdict and other uncontroverted testimony, and the discretionary powers conferred by law upon the court, judgment was entered, in all respects favorable to plaintiff, from which defendant has perfected this appeal.

By the verdict it was found that plaintiff's grounds for divorce existed, and these grounds accrued subsequent to December 29, 1935; that the conditions rendered the parties again living together insupportable; that plaintiff was a suitable person to have custody of the children and that the children's best interest demanded that she have that custody; that $75.00 per month was reasonably necessary to maintain and support the children until they become sixteen years of age; that $1,100.00 was reasonable compensation to plaintiff's counsel as attorney's fees; the jury further found that neither Ross Robertson nor the Maro Company, Inc., had in their possession any property belonging to the community estate; that there was no consideration paid by Mrs. Myrtle Scannell to defendant for the assignment to her by defendant, for the fraudulent purpose of depriving plaintiff of her community interest therein; that since Mrs. Myrtle Scannell had received that assignment, she had received for oil runs therefrom the sum of $851.55; that the reasonable market value of the oil lease was $1,500.00; that defendant had due him some amount for salary by Wichita Royalty Company; that the salary charged that company by defendant was $400.00 per month; the value of the homestead was $6,500.00, the household furniture was valued at $1,000.00, the value of the vacant lots was $800.00, and that the market value of the shares of stock owned by the community estate on October 18, 1935, was $22,437.52.

An interlocutory judgment was entered on December 12, 1936, dissolving the marital relation between the parties, award-

ing the custody of the children to plaintiff, finding in favor of the defendants, Ross Robertson and Maro Company, Inc., and discharging them with their costs; after the testimony was in and before judgment was entered, the court sustained a plea in abatement in favor of the defendant, Wichita Royalty Company, in which it appeared the only liability of that defendant was contingent upon a contested unliquidated claim held by defendant, Scannell, for salary; the judgment sustaining the plea was without prejudice to either plaintiff or defendant as to their respective rights thereunder; with this interlocutory judgment entered, in which a receiver was appointed to take charge of the entire community estate, the parties defendant named went out of the case and no occasion will arise for us to again refer to them. By this judgment, the court found that the community estate consisting of real and personal property, was of the reasonable value of something more than $50,000.00, and found that practically all of it was in the possession of defendant. The receiver was instructed to take charge of all property, and the defendant was required to deliver it to the receiver. The court there specifically reserved jurisdiction of the subject matter, for the purpose of making further orders relating to the division of property pending the receivership.

On January 21, 1937, the receiver reported to the court that he had received from the defendant certain property previously found by the court to be in his possession, belonging to the community estate, including the home place, the furniture, an Olds Automobile, the Archer County lease, and some shares of stocks (not those found by the court to be in defendant's possession belonging to the community), and that under former orders of the court he has advertised all for sale to the highest bidder, that plaintiff had bid $8,836.00 and defendant $9,577.00, each party conditioning such bid upon being allowed to take the property and have the amount charged to her or his interest in the estate without payment of any cash.

A hearing was had on the report and the court found from the testimony adduced that defendant had not delivered to the receiver, and had refused to so deliver, any of the shares of stock previously found to be of the value of $22,437.52, and none of the $13,579.10 cash and other property so found by the court to be in his possession, and that the amount bid by plaintiff was the fair value of the property so advertised and offered for sale, and was less than one-half of the total, and it would therefore be right and proper to permit her to purchase at said bid the property and for the amount to be charged against her interest therein; but that because of the refusal of defendant to deliver to the receiver the remainder of the property, he should not be permitted to buy the property at the bid offered with charge against his interest for the purchase money.

In the original trial, plaintiff testified in detail as to her grounds for divorce, and no useful purpose can be served by further referring to it here, but it is sufficient to say it supports the judgment. She testified that shortly prior to October 18, 1935, at the request of defendant, who was temporarily in a northern state, she had occasion to look in a safety deposit box at the bank for certain data, and found therein the shares of stock which she at that time listed and produced upon the trial, witnesses connected with the stock exchange testified as to their values, and that the market was advancing about that time; bank officials testified as to cash deposits and moneys withdrawn by defendant, in form of cashier's checks, between October 18, 1935, and the date of final separation, on January 3, 1936, and others thereafter. The defendant was present in court at the selection of the jury, but absented himself and could not be found by an officer with subpoena while the trial was going on. Plaintiff had taken his deposition before trial and offered it in evidence. A careful reading of that deposition discloses defendant rendered no aid in making known the amount, values and location of property; it supported plaintiff's theory that he was not informing her about the community property, and was perhaps introduced for that purpose. It was upon the testimony above referred to, that the court found the value of the community property to be approximately $50,000.00.

At a subsequent contempt hearing, and while the court was holding final judgment in abeyance, defendant testified with respect to the property, and from this testimony the court altered his former findings as to values and found the community estate was reasonably worth $30,000.00 at the time of the divorce proceedings,

and ordered it divided equally between the parties and otherwise confirmed the original judgment and findings.

Defendant presents together his first twelve points or propositions under his assignments, brought forward in the brief. They challenge the right of the trial court to hear testimony as to the value of community property, as of October 18, 1935, when the grounds of divorce are shown to have occurred subsequent to December 29th, 1935. He further complains because the judgment finds the value of cash and liquid assets such as deposits and cashier's certificates, without a jury finding thereon.

The statement of facts before us consists of 450 pages and covers numerous hearings had, and it would require an expert accountant to arrive at a correct figure, if one could be had at all. However, we note by defendant's deposition, taken in March, 1936, where he was questioned with regard to what he had done with the estate, he sets out items aggregating $7,000.00, paid since October. Whereas at the contempt hearing, in December following, defendant was able to account for an expenditure during the same period of $13,000.00. After this hearing, the court changed his former findings of a $50,000.00 valuation, to $30,000.00, which amount he held defendant accountable for. The latter valuation was determined as of February 9, 1936, the date on which the first amended petition was filed.

■ We see no error in the matters complained of worthy of a reversal of this case. Our statutes confer upon the trial court a wide discretion in both matters of divorce and a division of the community property. Articles 4632 and 4638, R.C.S. There is nothing in the record to indicate what trouble was brewing between the parties prior to October 18, 1935, when the original petition was filed. That petition is not in the transcript. The final judgment was entered June 3, 1937, and it was clearly proper for the court to inquire into and base a judgment on matters happening between those dates, more especially as to matters of property rights. No complaint is made here of the granting of the divorce, but is confined to the division of the property. Because of the condonation agreement of December 29, 1935, grounds for divorce were confined to subsequent acts. Owing to the reluctance of defendant (that is putting it mildly) in divulging to plaintiff, the receiver and the court the true status of the property, any pertinent circumstance could be proven to aid the court in rendering a decree making "a division of the estate of the parties in such a way as the court shall deem just and right, having due regard to the rights of each party and their children, if any." Article 4638, R.C.S.

■ It has been held many times in this state that under our statutes, the court will render judgment only upon full and satisfactory evidence sustaining the allegations of the petition, as provided in Article 4632, R.C.S. The courts are not bound even by a finding of a jury; they are only advisory, yet insofar as the grounds for divorce are concerned, both the findings of the jury and judgment are supported by the uncontroverted testimony. The discretion given to the trial court is not confined to the matter of grounds for divorce, but is extended to an equitable division of the property; the wisdom of this provision of law has seldom been criticised. The appellate courts may not revise that discretion in the absence of a clear abuse by the trial court. In the nature of our present procedure, these matters have seldom reached the Supreme Court. On a certified question in case of Hedtke v. Hedtke, 112 Tex. 404, 248 S.W. 21, in discussing the power vested by statute in the trial court, Judge Greenwood, speaking for the court, said (page 23): "The court pronouncing a decree of divorce is invested with wide discretion in disposing of any and all property of the parties, separate or community, and * * * its action, in the exercise of such discretion, should be corrected on appeal only where an abuse of discretion is shown in that the disposition made of some property is manifestly unjust and unfair." Some of the old cases by the Supreme Court are cited for the rule.

■ In Moor v. Moor, Tex.Civ.App., 255 S.W. 231, it is said the wisdom for such a rule is grounded upon such matters as that the court could take into consideration the wrong inflicted upon the wife by the cause for divorce, and not send away an injured woman with little save her mental sufferings, blasted hopes and ruined life, but may give her compensation for her wrongs, beyond her interest in the community property. To this may be added the further reason that when for good cause shown she appears to be the proper one to have custody of the children of tender years, a just provision should be made for their maintenance and education. Although in the mother's care and custody, they continue to be his own offspring and his duty of support is

not lessened by the fact that the court finds that she, and not he, should be entrusted with their rearing. His obligation to them does not cease when they are awarded to the wife. Ligon v. Ligon, 39 Tex.Civ.App. 392, 87 S.W. 838; Bond v. Bond, 41 Tex. Civ.App. 129, 90 S.W. 1128; Liddell v. Liddell, Tex.Civ.App., 29 S.W.2d 868.

This court passed upon some of the same questions here involved, in the case of Turman v. Turman, 99 S.W.2d 947, in which writ was denied; complaint was there made that the judgment rendered did not conform to a jury verdict when a jury trial was demanded and had. We held there was no error presented, because the division of the property was within the discretion of the trial court, and that only when a flagrant abuse of that discretion is shown, would it be set aside. In the case last cited, as in the one before us now, it was complained that the values of property were not confined to the time of trial, instead of a previous date; it was there held that the value as of the date the property was taken and appropriated by the husband, controlled.

It was held in Fain v. Fain, Tex.Civ.App., 6 S.W.2d 403, writ dismissed, that the trial court in divorce cases, where property was to be divided, may under Article 4638, construe pleadings more liberally than in other civil cases, and proceed upon its independent and additional findings, to those of the jury verdict, to make division of community property.

In Becker v. Becker, Tex.Civ.App., 299 S.W. 528, the question of an equitable division of the property between the parties was submitted to the jury, and the court declined to follow the verdict, and error was assigned for the refusal. The appellate court reasoned, in this language (page 530): " * * * the question of division and disposition of property in a divorce suit being one solely for the court, * * * the findings of the jury on the issue submitted was in no way binding upon the court." The further holding in that case is to the effect that there would be no room for the court to exercise its discretion in such matters, if the findings of the jury on the question was binding on the court.

In support of his contention that values should have been ascertained as of the date of the trial, defendant cites the case of Price v. Price, 22 Tex. 334; but we think the facts disclose in that case, its distinguishing features from those before us. There the court said an inquiry over a peri-

od of seven years previous to the trial, embracing speculation as to what amount of money the husband should have had on hand when the case was tried, together with testimony as to what other men made during a like period under similar circumstances, was too uncertain and speculative to form the basis for a money judgment, adding, "Without evidence that the defendant actually had any money on hand at that time, *or within any short time before.*" (Italics ours.)

Quotations taken from Texas Jurisprudence in the brief, are based upon cases there cited, and a reading of those authorities will disclose that they are concerning matters not here involved; such as establishing an interest in the separate property of another, and divesting out of one title to his separate property. The statute itself (Article 4638) forbids this. No error is presented by these assignments and they must be overruled.

Other assignments complain that the court failed to submit an issue or issues to the jury which would have afforded an opportunity to have the verdict determine whether or not the property agreement made between the parties was binding upon them. By the terms of the property settlement it was provided that it should become effective upon approval by the court; but it appears from the uncontradicted testimony that it was never presented for approval and naturally was never so approved. It also is shown that its terms were never carried out by the parties, nor was any attempt made to do so. Again, the record shows that about one month later, when the parties became reconciled and they agreed to resume their marital relation, on December 29, 1935, they entered into a written agreement to that effect, and by its terms, agreed that if either should become dissatisfied, a fair property division would be made. Even if it could be said the former agreement had any binding effect, irrespective of the provisions therein mentioned and the testimony to the effect it was never carried out, we think the subsequent one above mentioned had the effect to nullify the former, and agree that upon the happening of the contingencies mentioned in the second, a fair property division would be made. We see no error in the court so treating the first agreement and in not submitting it to the jury.

The judgment setting aside the assignment by defendant to his mother of the oil lease in Archer County, is complained

of. It is argued in the brief that the assignment of the lease does not appear in the record, and the court was unwarranted in submitting to the jury the issue of whether Mrs. Myrtle Scannell paid value for the lease, and if not, did defendant assign it to her for the purpose of defrauding plaintiff out of her interest therein. We find in the record what purports to be a copy of the assignment reciting a consideration of one dollar and other good and valuable considerations. It bears date of January 10, 1936. This date is less than a week after their second and final separation; other acts of defendant found by the court to be in fraud of his wife, were both shortly before and after the date of the conveyance; absent some testimony to the contrary, we think the jury was warranted in so answering the issue, and that no error is shown to have been committed in this respect.

■ We think little good could be accomplished by extending these conclusions further, by referring to the effect the judgment rendered would have upon the defendant, provided his theory is true that the court has in fact given the plaintiff all community property, with an unsatisfied claim against defendant of $4,000.00, and charged defendant with community debts of $90,000.00. We think the contention that there are community debts in the sum last mentioned is poorly grounded, as is the contention that all property has been given the wife and children. The trial court no doubt felt the same way about both the testimony as a whole and the manner in which the defendant had conducted himself, with reference to the property while the suit was pending.

■ The trial court had all the parties before him, and labored at frequent intervals for a period of more than a year, in an effort to arrive at a fair and equitable division of the property, with a view to doing equity to all concerned. Under all the circumstances, he believed the theory of plaintiff and disbelieved, in a large measure, that of defendant; this was within his discretion, and we are not prepared to say it was not fairly exercised. By virtue of the authorities herein cited, we are not inclined to revise the judgment, nor even say it was not fairly entered.

We therefore overrule all assignments of error and affirm the judgment of the trial court.

### On Motion for Rehearing.

There has been pending before us the motion for rehearing by appellant since April 7, 1938, in which a grave challenge is made of the soundness of principles announced in our original opinion. We are reminded that since our action is final in the cause we should, again, consider well what we have said. By way of a predicate for argument in favor of the motion, these queries are made, (a) Can the trial court, subsequent to verdict, make findings independent of the jury's verdict, as distinguished from its right to apportion the property found by the jury? (b) If so, is it error not to hear one of the contestants as to the amount and extent of community assets? And (c) can the trial court divest Scannell of his interest in the homestead or in the assets from its sale and invest them in Mrs. Scannell by approving her credit bid therefor?

■ The seriousness of appellant's counsel as evidenced by their forceful arguments has prompted us to withhold action on the motion until now, to the end that we may again carefully study the voluminous record presented by the appeal.

The first question may be answered in the affirmative, based upon the rule announced in 41 Tex.Jur. § 371, p. 1239, where it is said: "The court may determine undisputed issues of fact and render judgment thereon without submitting such issues to the jury." Many decisions are there cited which sustain the statement quoted. Again in the same volume last cited at section 228, p. 1027, it is said: "Only controverted questions of fact raised by the pleadings and the evidence in the case are to be submitted; conversely, uncontroverted issues are not to be submitted." It is contended that these well settled abstract and concrete statements of the law are not applicable to the point raised, for, it is claimed the judgment rendered by the court finding that the community estate was of the reasonable value of $30,000.00 necessarily included property values which were not found by the jury verdict, to exist; and the excess over and above the amount found by the jury was an independent finding by the court subsequent to the rendition of the verdict.

As stated in the original opinion, the figures and values are extremely complicated, but we have taken the jury verdict as to property and its value, and the addi-

tional testimony of bankers, brokers and others who testified and are not shown to have had any interest in the result of the suit, along with the testimony of appellant given by deposition upon the trial, and to give credit to this uncontroverted testimony, and allow a deduction therefrom of all sums appellant claimed to have been expended by him and chargeable to the community estate, and from this we find the value of the estate as found by the court, appears justified. If these things are true, then under the rule of law above announced no error is shown.

The jury verdict found that the value of the property inquired about by the issues submitted was (in round numbers) $32,900. The bankers testified they had issued to appellant cashier's checks on October 17th, in the amount of $6,348.00. On the 23rd of October another such check was issued for $529.00. That he had on deposit in cash on October 17th, $7,566.00, totaling approximately $14,440.00. The last figures added to $32,900.00, the amount found by the jury, will be approximately $47,340.00 as the gross value of the community property.

By appellant's deposition taken by appellee and introduced upon the trial, the best that could be elicited from him showed that he expended from the funds, claimed by appellee to have been in his possession, approximately $7,570.00. To deduct from the total amount found by the jury and the items shown by the bankers in cash and cashier's checks, within two or three days time, about which no conflict appears in the evidence, and there would be left in his hands property of the value of approximately $39,770.00. The court found the estate to be worth $30,000.00, and required appellant to account for one-half of that amount. Necessarily, it follows, that the difference in the amount of property values contained in the verdict and the $30,000.00 found by the court to be the total value, was an independent finding by the court without the aid of the jury. The highly controverted issue of whether or not the stocks and bonds were on hand at the time inquired about, was submitted to the jury, and determined against the contention of appellant; there was no serious controversy about the other items that entered into the verdict, such as the home, the household goods, the automobile, the oil lease in Archer County and the vacant lots. At any rate these items were submitted in issues and all were answered. By the verdict it was found the stocks and bonds were on hand on October 18, while by his deposition, appellant claims that he had converted the bonds and that much of the moneys on hand in the banks on that date was the result of such sales. If the verdict was correct, appellant's contention is wrong. We think the trial court was well within his official duty when he made independent findings to that of the jury upon uncontroverted facts proven by disinterested witnesses.

The second question, in the motion, is "If the court can make independent findings from those found by the jury, should not the appellant be heard?" We think we answered that question in the original opinion when we disclosed that appellant was present at the hearing and voluntarily absented himself from the trial thereby declining to testify; but upon subsequent hearings growing out of charges of contempt of court, he testified fully concerning many of the property transactions, but the court heard it only in connection with the contempt proceedings, and specifically declined to let his testimony given at that time, enter into the rendition of final judgment in the divorce proceedings.

It will be observed that in the preliminary or interlocutory judgment entered by the court at the time of the trial on its merits, the court found that the community estate was worth $50,000.00. When the final judgment was entered, that part finding the value to be as above stated, was withdrawn and a finding entered to the effect that there was a $30,000.00 community estate. Whether the court based the last finding upon testimony offered during the contempt proceedings we are not in a position to say, but having lessened the value, when appellant was charged with having it in his possession, was so materially in his favor, he could not be heard to complain.

There are many uncertainties disclosed by the evidence had upon the original trial, which if subsequently considered by the court could have influenced him to make the change. For instance, we observe it was shown upon the trial that appellant had issued to him on October 17th, approximately $7,000.00 in cashier's checks, and that upon the same day he had approximately the same amount on deposit in cash. Now if the cash deposits were absorbed by the cashier's checks, he would not be charge-

able with both. Upon this point the evidence is not clear. If the court should have decided these items were duplicated then he was right in reconsidering the former findings; if he considered the amounts were duplicated he could deduct one or the other and still be well within the figures finally found by him.

For the reasons stated both here and in the original opinion we feel that the figures produced by us are but feeble disclosures as to the condition of this estate; they may be far from right, but not being expert accountants, it is the best we can do.

■ The third inquiry with which appellant introduces this motion, is to ascertain if the court can divest him of the home place by permitting the appellee to purchase it from the receiver upon a credit bid, that is, a bid to be credited upon the receipt by her of her interest in the estate. We think that under the conditions existing in this case, with the findings of values, the respective interests of the parties shown, the receivership proceedings necessary for a partition of the community property, there was no error shown in permitting the receiver to deliver the home place to appellee at an acceptable price to be charged against her interest in the whole.

■ Our attention is called to a statement contained in the original opinion which reads: "There is nothing in the record to indicate what trouble was brewing between the parties prior to October 18, 1935, when the original petition was filed. That petition is not in the transcript. The final judgment was entered June 3, 1937, and it was clearly proper for the court to inquire into and base a judgment on matters happening between those dates, more especially as to matters of property rights." We now think a part of that statement is incorrect and we here withdraw so much thereof as extended the time to the date of the final judgment, and substitute therefor the holding that it was proper for the court to permit inquiries into all matters happening between the filing of the original petition and the date on which the trial was had on its merits, viz., December 12, 1936, especially in matters pertaining to the amount of property belonging to the community estate, its value and an equitable division thereof.

■ It is argued by appellant in his motion, that our opinion holds that a party to divorce suit is not entitled to a jury trial, and also that one of the parties is not entitled to be heard in his own defense as to what constitutes the community property at hearing subsequent to verdict, when there is error in the verdict itself.

We do not consider what we have said susceptible to such a construction; we have not intended to hold a party to a divorce suit is not entitled to jury trial, nor have we held a party is not entitled to be heard upon such a trial as to what constitutes community property. But we do hold that there was no error in the court refusing to hear appellant's testimony given in several contempt proceedings with reference to that property, and consider it as if given upon the trial of the case upon its merits, when appellant had every opportunity to testify and have the issues all determined in that case, and declined to do so.

■ In appellant's motion he insists with much earnestness that we should grant him a rehearing, and further that if we should refuse it, then that the questions raised should be certified to the Supreme Court, and we are respectfully requested to do so. Believing as we do that we are correct in our disposition of the appeal, we are overruling the motion for rehearing as well also the request to certify.

.Motions overruled.