Jennie LANGFORD, Appellant,

v.

Frank LANGFORD, Appellee.

No. 13608.

Court of Civil Appeals of Texas.

San Antonio.

June 22, 1960.

Chester A. Oehler, Dallas, for appellant.

O'Conor & Freed, Laredo, for appellee.

MURRAY, Chief Justice.

This is a contested divorce suit. Frank Langford instituted the suit in the District Court of Webb County, against his wife, Jennie Langford, a resident of Tarrant County, Texas, seeking a divorce. The trial was to a jury, and based upon the verdict of the jury, the trial court on September 14, 1959, rendered judgment granting the divorce, from which judgment the wife, Jennie Langford, has prosecuted this appeal.

■ Appellant has raised the issue that Frank Langford was not an actual bona fide inhabitant of this State for a period of twelve months, and a resident of Laredo, Webb County, Texas, where the suit was filed, for six months next preceding the filing of same, and that, therefore, under the provisions of Article 4631, Vernon's Ann.Civ.Stats., the District Court of Webb County, Texas, was without jurisdiction to hear and decide the case. We sustain this contention. This matter was submitted to the jury in the following two issues:

"Special Issue No. 2:

"Do you find from full and satisfactory evidence that the plaintiff, Frank Langford, has had a true and real intention to make his permanent abode in Laredo, Texas?

"In this connection, by 'permanent abode' is not meant necessarily the ownership of a home or the possession of a family circle in a specified locality; it is enough if a choice becomes apparent through overt acts that the locality or community has been chosen as the place wherein life is to be lived permanently, and from which place one may absent himself temporarily but always with the intention to return to continue living in said locality or community.

"Answer 'Yes' or 'No'.

"We, the jury, answer Yes.

"If you have answered the above Special Issue No. 2 'yes', you will answer the following special issue; otherwise you need not answer same.

"Special Issue No. 3:

"Do you find from full and satisfactory evidence that the plaintiff, Frank Langford has had such an intention, if you have so found, for a period longer than one year prior to the date of the filing of his petition herein, April 14, 1959?

"Answer 'yes' or 'no'.

"We, the jury, answer Yes."

These issues as worded did not submit to the jury the all important question of whether Frank Langford was a bona fide inhabitant of the State of Texas, for a period of twelve months, and a resident of Webb County for six months *next preceding* the filing of this suit, in keeping with the provisions of Art. 4631, Vernon's Ann.Civ.Stats. The fact that appellee may have been an inhabitant of Texas for twelve months, and a resident of Webb County for six months at some time prior to the filing of the suit does not meet the requirements of Art. 4631, supra. The requirement is, that such inhabitancy and residence must have been for such periods *next preceding* the filing of the suit.

■ It is true that in a divorce suit the verdict in many respects is not binding on the trial court and is advisory only, but when a jury trial is had the burden is upon the plaintiff to offer proof and secure a jury finding on all issues essential to the granting of the divorce, unless such facts are conclusively established by the evidence. In the case at bar the questions of inhabitancy in the State and residence in Webb County were sharply disputed issues.

In Ballard v. Ballard, Tex.Civ.App., 186 S.W.2d 294, 295, Justice Norvell, in speaking for this Court, said:

"In order to obtain a divorce in this State by means of a trial to a jury, Article 4632, Vernon's Ann.Civ.Stats., requires that the plaintiff procure jury findings affirming the material facts alleged in the petition; save and except as to those facts only which are established as a matter of law, and consequently need not be submitted to the jury under our special issue practice. Scannell v. Scannell, Tex.Civ. App., 117 S.W.2d 538, 545. Plaintiff must also satisfy the mind of the trial judge that the evidence relied upon to support a decree of divorce is 'full and satisfactory.' Article 4632, Vernon's Ann.Civ.Stats.; Moore v. Moore, 22 Tex. 237; McCrary v. Mc-Crary, Tex.Civ.App., 230 S.W. 187."

Even if the issue had been properly submitted to the jury and an affirmative answer given, we are still of the opinion that the evidence on this matter was not full and satisfactory, as it is required to be by the provisions of Art. 4632, Vernon's Ann.Civ.Stats.

In 1950, appellee and appellant were married and lived together for several years at Mansfield, Tarrant County, Texas. Both had been previously married, such prior marriages having been terminated by death and not by divorce. In 1954, appellee was confined in the Veterans Hospital at Waco, Texas, where he remained for about one year, and during which time he had one lung removed. When he was able to leave the hospital he returned to Mansfield and lived there for a while with appellant. He testified that she had changed, and was unhappy because he was in frail health; that she refused to care for him and stated that she was not going to be "saddled with any more old crow-bait" and told him to leave, which he did.

According to appellant there was no trouble between them. She did not call him an old crowbait, and did not ask him to leave. He told her he was going to

Old Mexico and write a story and then return. She helped him to pack his clothes and they parted on the best of terms. This was in the fall of 1955. He first went to Hot Springs, Arkansas, stayed there one month and then went to Laredo, Webb County, Texas. Appellant said that after he had resided in Laredo for about a year and a half he decided to make it his permanent home. He found that the dry climate helped his bronchial trouble. When he left Mansfield he placed his bank account with the National Bank of Commerce, Fort Worth, Texas, where it remained until shortly before the trial of this case in Laredo. He received a pension check from the Veterans Administration, which was deposited in the Fort Worth Bank without his endorsement, and he would then draw checks on such account.

While residing in Laredo, appellee would make trips into Old Mexico. He used up two six months visas not consecutively, however, while living at or near San Luis Potosi, which is some five or six hundred miles in the interior of Old Mexico. While there he joined the Catholic Church, and at the time of the trial his membership was still there. Appellee was trying to be a writer and painter, and went to Old Mexico looking for material to paint or write about. After he returned to Laredo on May 25, 1959, and after filing this suit on April 14, 1959, he wrote the following letter to a friend named C. H. Harrison:

"May 25/59
"Mr. C. H. Harrison,
Mansfield, Texas.

"Dear Chas:

"Been a long time, no see. I had a very interesting trip down through he land of manna. I lived out almost two six months visas, and guess I would be there yet if I hadn't got sick.

"It all got started when I met an American Air Forse Col. Retired.—What is the getting part sick did.—

"I met him in Maguel Allenda, where I went to take a two months are course. That is the art center of Mexico.

"Well this Colonel was interested in painting too. We went on a trip together. We came to a river, and there was more water in the river than we thought.

"A Mexican farmer pulled the car out with a team of oxen. We swam out, and came out on the wrong side. There was a small village there. No doctor, no hotel. A Padre gave us dry blankets and bedded us down beneath his church. A lovely old Senora brought us a jar of hot 'caldo' and a bottle of taquila; but in spite of this tender care, I developed a dose of pneumonia. Now pneumonia is not the best thing to have when you have just one lung, and that one haywire.

"There are no phones in this village of Santa Marie del Rio, but the Padre got word out someway and a helicopter from the San Luis Potosi Air Base came in and got us. I went to the hospital and stayed there 27 days. They have very good Doctors in Mexico. They advised me to migrate to a lower altitude. So I came back here.

"This all happened last August. I came out the first of October. I came over here where I could get V. A. medical attention. I feel pretty good now, but have a new scar on my lung.

"This City of San Luis Potosi is a very interesting place. About a hundred and sixty thousand people. Seventy percent Indians. It is in the heart of the gold and silver lodes, and is a very rich town. Altitude 6200 feet. That is a thousand feet higher than Denver. The climate there is ideal. Always cool. Frost unknown. If I could stand the high altitude I would live there the few remaining years of my dissipated career. I may anyhow.

"Well anyway, I brought out ten paintings that will be on display here in Laredo at their August art exhibit. This is getting to be quite an art center. It has been pretty hot here lately. We have held

the Nations record for several days now, but the nights are generally cool.

"There has been some real good fishing here in the Rio Grande. The white bass quit running about a month ago, and the cat fish are here now. It was a very simple matter to catch the limit of bass. I done a lot of fishing. There is an outdoor kitchen where I live for anyone that wants to use it, and we sure have cooked up some real fish dinners there. The Rio Grande, being an international river is open to free fishing the year round, and you can get fish there the year round. A Mexican caught a Gar a while back that was seven feet long.

"Chas., do you remember sending me a couple of deeds to sign? Have you a record of that deal in your files? All I want is the date you sent them to me. I found your address in my book, but have misplaced the letters from you. If you have the date of this transaction, I would appreciate it if you would furnish me with it.

"I intend to stay here for a few months yet, and will probably check into the hospital for a few weeks. The local sawbones here has suggested that.

"I hope you and yours are all well, and will be looking forward to a letter from you.

"Yours very truly,

Frank Langford.

"ps. Had a wonderful rain last night, and it is nice and cool today.

"fl Exchange Hotel
2016 Farragut
Laredo, Texas

Frank Langford /s/"

On July 9, 1956, he wrote his wife the following letter:

"July 9, 1956
3837 Washington St.
Nuevo Laredo, Tamps.

"Dear Jen.

"I don't know what you will think of this proposition, but I think it is time we

come to some conclusion. I am most certainly never coming back to Mansfield. I cant think of any good reason why I should. My memory of that place is not of the pleasant sort.

"I have been in Mexico for almost nine months now. I speak their language. I live with Mexicans. I know just one American, and he is married to a Mexican woman.

"In spite of the fact that I am ill about half of the time, I am very happy. I am under the care of a Mexican doctor. He is very good. He has changed my medicine to a much deeper sedation. In other words I am an addit. I know some very nice people here, and they are very kind to me. I was to a bull fight last Sunday and sat in the private box with the Mayor and his wife. He is also a Doctor.

"I have a four room modern cottage. I have air condition, refrigeration, and gas and electricity. I have a maid for domestic work, and the landlord furnishes a maid for the patio. The landlord owns the radio and television broadcasting station here, and my house is part of the station. I am registered with the American Council here and they will ship me out in case of an emergency. I dont know how much longer I will live but I intend to get all I can out of what is left.

"Now. I suggest that you get a divorce. I think it is the best for the both of us. I am willing to arrange for alimony for you. I can see no good reason why we should continue this way. You can charge me with anything you wish. Desertion, cruelty or anything. I dont care. I can get a Mexican divorce but it is not legal in the States. You get it and I'll pay for it. If you are too nervous to answer this get Jane to write. I have a faint memory of when I was very nervous and the only consolation I got was hour after hour of nigger music. You thought it quite kute.

"I am looking forward to a letter. I would not like to make a trip to Reno.

"Frank."

When appellee moved his bank account from Fort Worth to Laredo, some two or three months before filing this suit, he gave the First National Bank of Laredo two addresses, one in Laredo and the other in Nuevo Laredo, Old Mexico. Shortly thereafter he removed the Laredo address and left only the address in Nuevo Laredo.

The above evidence failed to establish appellee's residence in Laredo, Texas, for six months next prior to the filing of his suit, as a matter of law. The trial court heard the plea in abatement and the merits of the case together, and granted the divorce, thus impliedly overruling the plea in abatement and refusing to dismiss the cause.

We do not find it necessary to pass upon the question as to whether the evidence was full and satisfactory with reference to the alleged cruel treatment on the part of appellant.

Accordingly, the judgment of the trial court is reversed and the cause dismissed.