### FANNIE E. GOLDING v. J. C. GOLDING.

Decided February 8, 1908.

**Divorce—Cruel Treatment—Pleading.**

A petition for divorce by a wife against her husband based upon such excesses, cruel treatment and outrages as to render their living together insupportable, considered, and held sufficient as against a general demurrer.

Appeal from the District Court of Potter County. Tried below before Hon. J. N. Browning.

*L. C. Barrett* and *J. A. Templeton,* for appellant.

*Madden & Trulove* and *Ben H. Stone,* for appellee.—In support of the judgment cited: James v. James, 41 S. W. Rep., 413; Rev. Stats. art. 2977, subdiv. 1; Camp v. Camp, 18 Texas, 534; Scott v. Scott, 61 Texas, 121.

SPEER, ASSOCIATE JUSTICE.—Fannie E. Golding has appealed from the judgment of the District Court of Potter County sustaining a general demurrer to the following petition for divorce:

"Fannie E. Golding, complaining of J. C. Golding, represents that both parties reside in Potter County, Texas, and have so resided for more than six months next before the filing of this petition.

"That heretofore, to wit, on or about the 17th day of October, 1897, plaintiff and defendant married each other and became husband and wife and have been such ever since. That plaintiff at the time she lived and cohabited with defendant had one child by him, to wit, Alma D. Golding, a girl now about five years old, and that during all the time plaintiff and defendant lived together as husband and wife aforesaid she conducted herself with propriety,

managed the household affairs of herself and husband with prudence and economy, and at all the said times treated her said husband with kindness and affection. But that defendant, disregarding the solemnity of his marriage vow and his obligation to treat plaintiff with kindness and attention, within about a year after their said marriage commenced a course of unkind, harsh and tyrannical conduct towards her, which continued with very slight intermission until he finally left and abandoned her on or about the 29th day of January, 1907.

"That on divers occasions while plaintiff lived with defendant as aforesaid he was guilty of excesses, cruel treatment and outrageous conduct towards her of such a nature as to render their living together insupportable. That on or about the 15th day of November, 1898, and at many other days since that, too numerous to mention, defendant, having two boys by a former marriage, permitted them and encouraged them to go into the house of plaintiff and defendant and for the purpose of vexing and harassing this plaintiff said boys did put cartridges into the open fire place that had a fire therein, and said cartridges did explode therein and scared and frightened plaintiff and made her sick, and she thereupon told defendant of said conduct of said boys, and defendant did then and there, in a violent and abusive manner, dispute plaintiff's word and said he did not want to live with her anyway and he intended to leave her.

"That on many other occasions and on or about the 20th day of January, 1899, defendant permitted and encouraged one of said boys, and he did go in the house where plaintiff was making her home with defendant, and cut up the carpet on the floor, and did swear at and call plaintiff ugly names, and when plaintiff complained to defendant of such said conduct (of which she did so complain), the defendant in an insulting tone and manner told plaintiff that said conduct of said boy was provoked by the conduct of plaintiff and that he wished that he had never married her and that he did not love her.

"That afterwards, to wit, on or about the 29th day of September, 1901, plaintiff had her horse and buggy hitched up and prepared to drive out of the lot with intent to visit one of her neighbors and to take one of her neighbor women home, defendant encouraged one of said boys and said boy did lock the gate of the lot in which said buggy and horse was, and plaintiff could not get said horse and buggy out until said gate was torn loose, and this was done in the presence of plaintiff and it was done in the presence of plaintiff's friends and neighbors, which greatly grieved, mortified and humiliated plaintiff, and it was done for that purpose. That before then it was known by defendant, to wit, on or about the 15th day of May, 1901, that plaintiff was going to bear him, defendant, said child, to wit, Alma D. Golding, defendant became more cruel than ever and brought a woman who had the reputation of being lewd to the house of plaintiff and defendant where plaintiff was making their home, and by force compelled plaintiff to allow and permit said woman to stay in and live in the same house and under the same roof with-

plaintiff, for the space of about three months, and this was done for the purpose and intent on the part of defendant of bringing disgrace on the plaintiff and of making her lose the good will of her neighbors and friends, of which plaintiff then and there had many.

"That before said Alma Golding was born, and after it was known by defendant that said child would be born to plaintiff and defendant, this said defendant abused and bemeaned plaintiff because said child was coming into the world. That at and during all of said times defendant's said boys, at the instance and under the encouragement of defendant, would plan and threaten that defendant would leave plaintiff without any means of support for herself and child.

"That on or about the 1st day of November, 1899, and between that and 1903, defendant converted all of his property into money and put plaintiff into a rented house and abandoned her and left her sick with said child for the space of about ten months, and refused to pay the rent or furnish medicine or medical aid to cure plaintiff. That on or about the 1st day of January, 1907, and many other times, defendant's said boys, under encouragement of defendant, poured coal oil over the house where this plaintiff and defendant were making their home. That defendant, although he had in his possession the community property of plaintiff and defendant, refused to allow or give plaintiff sufficient means to clothe herself and child, and plaintiff in order to clothe herself and child did so until she by reason of the work and labor she was compelled by defendant to undergo and by reason of said insults and cruel treatment broke down in health, and when she was no longer able to work, on or about the 28th day of January, 1907, abandoned plaintiff at Amarillo, Potter County, Texas, and appropriated all the community property of plaintiff and defendant, and left plaintiff sick without any means of support. That afterwards defendant, on or about the 30th day of January, 1907, put and caused to be published in the Daily Panhandle, a daily newspaper published in said city of Amarillo, having a large circulation, the following notice, to wit:

### " 'TO THE PUBLIC.

" 'All persons are hereby notified to sell nothing on my credit, as I will not be responsible for any accounts contracted by others than myself.

" 'J. C. Golding.'

"That said notice was wilfully and maliciously placed in said newspaper with the intent on the part of defendant to keep plaintiff from obtaining from the public and business people sufficient food and raiment for herself and child, and for the purpose of making plaintiff lose the good will and esteem of the public in general. That said course of conduct has grieved plaintiff and humiliated and mortified her to such an extent that she is now, and has for a long time, been sick and unable to support herself or maintain and

educate her said child. That plaintiff is a poor woman and neither herself or child has any property or money on which to subsist.

"That plaintiff has been educated and refined and tenderly treated and cared for up to the time she married defendant, but since that time her days have been stormy and her nights sleepless because of said conduct of defendant. That to live longer with defendant will certainly endanger her life and probably kill her as she verily believes.

"That plaintiff and defendant own property and money of their community estate to about the amount of about Seventy-five Thousand Dollars, or more, as she is informed and believes. That defendant now has all of said property in his possession, except a small house and lot which they have been using as their homestead. That plaintiff is now in destitute circumstances and in great want. That the defendant is now a druggist and runs a drug store in said Amarillo and his income is about four thousand dollars per annum. That the community property of plaintiff and defendant consists of money, real estate and other personal property.

"That defendant has been, as she, plaintiff, believes and is informed, hiding out the community money and property of herself and defendant for the purpose of beating plaintiff out of her part of it. Wherefore she prays that defendant be cited to answer this petition; that he be required to return into court an inventory and appraisement under oath of all the property belonging to the community estate of plaintiff and defendant, and that a writ of injunction issue restraining him from disposing of any part of the same, or contracting any debts on account thereof, until the further orders of this court; that during the pendency of this suit the defendant be required to pay into court quarterly the sum of $300 for the support and maintenance of plaintiff and her said child; that said child during the pendency of this suit be placed in the custody of plaintiff, and that defendant by a writ of injunction be restrained from interfering with it in any manner; that on final hearing she have judgment dissolving the marriage between plaintiff and defendant and for partition of the community property; that plaintiff have the care, custody and education of the said child of said marriage and that a proper and substantial provision be made for their support and maintenance, and she now here alleges that the sum of $200 payable monthly is a proper and suitable provision therefor; and for such other and further relief as the court shall think proper to grant, with costs of suit."

We have carefully examined the authorities cited by appellee in support of the court's action in sustaining a demurrer to the foregoing petition and none of them is authority for the ruling. If it be conceded that a general allegation of "excesses, cruel treatment or outrages" is not sufficient as against a general demurrer, as seems to have been held by some of the decisions, yet an examination of appellant's petition will disclose that she has gone much further and given in detail the conduct upon the part of appellee which she declares is of such a nature as to render their further living together insupportable. If this be true, she is entitled under the statute to

a decree of separation from the bonds of matrimony. It is peculiarly a question for the court or jury to determine, after hearing the facts, whether or not, considering the appellant's temperament and condition, and in fact all the circumstances, appellee's treatment is of such a nature as to render their living together insupportable. Spruill v. Spruill, 1 U. C., 244.

The judgment of the District Court is therefore reversed and the cause remanded for trial upon the merits.

*Reversed and remanded.*