A. N. Dawson v. S. P. Dawson.

Decided November 30, 1910.

**Divorce—Cruel Treatment by Wife—Pleading.**

In a suit for divorce by a husband on the ground of. excesses and cruel treatment on the part of his wife, the plaintiff alleged that the defendant, without provocation, hated and abused plaintiff's daughter while she was in affliction; that she defamed the memory of plaintiff's dead wife; wantonly assailed plaintiff's character; published him as lazy, indolent and good for nothing; demanded his expulsion from a benevolent society as unworthy of its membership; assaulted him, abused him, applied to him opprobrious epithets in the hearing of others; hated him; excluded him from his own dwelling, and had ceased to perform towards plaintiff the duties of a wife. Held sufficient, as against a general demurrer.

Appeal from the Fifty-fifth Judicial District, Harris County. Tried below before Hon. W. P. Hamblen.

*A. H. Jayne,* for appellant.

*James A. Breeding,* for appellee.

NEILL, Associate Justice.—This is a suit brought by appellant, the husband, against his wife, Sarah P. Dawson, for a divorce upon the ground of excesses, cruel treatment or outrages by her towards him. A general demurrer was sustained to plaintiff's first amended original petition and trial amendment, and, the plaintiff refusing further to amend, judgment was entered dismissing the cause.

It appears from the allegations in plaintiff's petition that the marriage sought to be dissolved was the second marriage of each party, and that plaintiff had a grown daughter by his first wife and that she afterwards married and within a few years obtained a divorce.

The plaintiff's first amended. original petition and trial amendment, after alleging the marriage and jurisdictional facts, alleges as the excesses or cruel treatment upon which he bases his action, substantially, as follows:    That after the marriage of plaintiff's daughter, defendant changed her attitude towards her, which had theretofore been kindly, and without apparent cause refused to speak to or have anything to do with her, and said to others many insulting things about her, being offended at his daughter, so plaintiff is informed and believes, because she and her husband occupied for a week after their marriage the best room in plaintiff's house, it being the only guest room; that defendant's conduct was such that if plaintiff even mentioned his daughter's name

in her presence or visited her, she became angered and said and did everything to show her displeasure, and that such treatment and conduct towards his daughter was pursued by defendant, seemingly to plaintiff, for the sole purpose of annoying and aggravating him; and that such course of conduct was continued by defendant from the early part of 1902 to April 23, 1908, when plaintiff separated from her.

That in December, 1904, plaintiff's daughter was deserted by her husband, and left with two children without means of support; that, under the circumstances, plaintiff was unable, on account of defendant's hatred for his daughter, to give her shelter at his home; that his daughter, then, having no means of heating her bed room, plaintiff took from his office and placed in her room an oil stove; that some weeks thereafter he brought the stove back, when defendant, on learning what he had done, became very angry at him and refused to use the stove again, and bought a new one, and then made the fact public to their neighbors and acquaintances; and that all this was done to humiliate and anger plaintiff and to waste his means.

That plaintiff, at times, has been hard pressed for money, and at such times defendant, particularly in 1905 and in the fall of 1907 and spring of 1908, would state to plaintiff's friends and acquaintances that she had to support the family, and during such periods of financial stringency she made his life miserable by taunting and nagging him, saying that if other men couldn't make a living at one thing they would go at something else, that, "You are lazy and trifling and no account," often asking him why he didn't go and live with his daughter, and would often refer to her past husband, saying that, "He was a different and better man than you (plaintiff) know how to be."

That at defendant's solicitation, on May 1, 1906, plaintiff gave up his own office and accepted a salaried position at $100 per month, which was all consumed in living expenses and defendant's traveling expenses on trips which he permitted her to make; that during the time he was working for a salary in 1906, and until the fall of 1907, plaintiff gave defendant regularly $60 per month, and often as much as $80, for her own and household expenses; and that he has reason to believe, and so states, that out of said sums defendant laid by for her own use considerable cash; but that he is informed defendant told the neighbors that plaintiff had limited her to the sum of $16 a month for her own and household expenses.

That when the financial stringency of 1907 came on, plaintiff lost his salaried position because of the stress of business; and that, because of the failure of a certain company which owed him $814, he was caught with something less than $50 on hand, and for about seven months thereafter was unable to get work of any kind; that during the entire period of the seven months, in addition to his worry caused by being out of employment, defendant worried him with nagging and taunts, taking advantage of every opportunity to humiliate him in the presence of others, by saying she was supporting him, although the money she made was trifling in amount, and made by selling *flat iron*

shoes at that, which in his judgment did not exceed $10 all told; that defendant also, at times, sold eggs and butter, but that plaintiff also paid for the feed for the hens and cows; and that she also earned a little money by making cheap dresses for negroes once in a while. The fact that plaintiff was out of employment was continually thrown up to him, until he thought he would lose his mind if he had to stand it any longer, and it greatly affected his mental composure, physical health and capacity for work.

That plaintiff in good faith exerted all his efforts to make defendant happy and contented and placed all his earnings for seven years past in improving and beautifying their home, yet defendant hated the very sight of him and refused to share his bed; and at one time, while sitting at the table, she threw something at him which hit him in the face and stunned him, so that for a moment he lost control of himself and started towards her, but came to himself before striking her, which he started to do.

That by reason of the fact that all his best efforts to make the defendant contented and happy and for the making of a home for himself, and in time of need a place of refuge for his daughter, had proved a failure, and because of the fact that defendant had repeatedly told him to leave her, because she could get along better without him, plaintiff did, on the morning of the 23d day of April, 1908, after being abused by her, tell her that he was not coming back, and that he was done with her, to which she replied by telling him to go straight to hell; and that she did not want him to come back, and that she never was more earnest in her life than when she said it. At that time plaintiff had no money and no place to go to; but did not go back and has not been back since; and she has conveyed to plaintiff, through a neighbor, the word that he would never be allowed to step a foot inside of that house again.

Plaintiff further alleged that frequently, when he was leaving home to go to his place of business, defendant came out on the gallery and steps of their residence and quarrelled at him in the hearing and presence of their neighbors, and would keep up her wrangling and calling at him, often calling "You low, mean devil," until he had gone a block from his home, in the presence and hearing of the owner and patrons of a store opposite their residence, as well as in the hearing of others. That in the presence of those whom plaintiff employed to do chores about his residence, defendant daily abused him, getting mad at him without cause, using words of intense meaning, such as "God damn you" or "Dog gone you," and telling him to get out and stay out; that she often spoke slurringly of plaintiff's first wife, whom she never knew, and who was long since deceased, saying, to humiliate him without cause, that she must have been a dirty housekeeper, and that dirty housekeeping was what he had been used to; that while he was living with her she stated to others that she loved her horse and dog better than she did plaintiff; that after plaintiff left her, defendant did all she could to prevent him getting business, and, though she knew where his office was,

refused to tell one of his patrons where, and tried to dissuade their acquaintances from giving him business. That when plaintiff sent his dues to a certain lodge, of which he and defendant were each members, defendant opposed the proper authorities giving him a receipt therefor, claiming before the lodge that he should be suspended and that either he or she would have to get out of it; and that, if they were going to allow plaintiff to stay, she would get out herself.

That such conduct, aforesaid, of the defendant is such cruel treatment, excessive and outrageous, as to make further living together with her insupportable and unendurable to plaintiff, and ruin his health, peace of mind and ability to earn a living.

For the purpose of determining the strength of the petition as against a general demurrer, all these allegations must be taken as true. Being conceded as true, does it appear therefrom, as a matter of law, that the facts alleged are not such excesses, cruel treatment or outrages on the part of defendant towards the plaintiff as to render their living together insupportable?

As is said in Sheffield v. Sheffield, 3 Texas, 86, "It can not be doubted that a series of studied vexations and deliberate insults and provocations would, under our statute, be sufficient cause for divorce without apprehension of personal violence or bodily hurt." See also Pinkard v. Pinkard, 14 Texas, 356; Jones v. Jones, 60 Texas, 451. As is asked in the last case, "What are wounds to the person as compared with those that affect the mind? The former may be healed, the latter endure for a lifetime." It is now generally held, even in jurisdictions where the common law obtains, unaided by statutes such as ours, regarding causes for divorce, that "any unjustifiable conduct on the part of either the husband or wife, which so grievously wounds the feelings of the other, or so utterly destroys the peace of mind of the other, as to seriously impair the health, or such as to utterly destroy the legitimate purpose and object of matrimony, constitutes extreme cruelty, constituting a cause for the dissolution of matrimony." Carpenter v. Carpenter, 30 Kan., 712, 2 Pac., 122, 46 Am. Rep., 108; Barnes v. Barnes, 95 Cal., 171, 30 Pac., 298, 16 L. R. A., 660, and note.

May not the husband's living with a wife who, without provocation, hates and abuses his daughter in her affliction, defames the memory of his dead wife, wantonly assails his character, publishes him as lazy, indolent and good for nothing, demands his expulsion from a benevolent society as unworthy of its membership, assaults him, constantly abuses him, applies to him in the hearing of others opprobrious epithets, hates him, excludes him from his dwelling, and ceases to perform towards him the duties of a wife, be insupportable? If so, then, under the law of this State, as declared by its Legislature, the sovereign authority of the State, no court has the authority to hold him to such a miserable existence by refusing to entertain a petition setting up such excesses as grounds for the dissolution of the marriage.

We are unable to say as a matter of law that the matters alleged by the plaintiff are not such excesses on the part of his wife as entitle him

to be divorced from her; but think they should have been submitted as facts to the jury. For, as is held in Golding v. Golding, 108 S. W., 496, it is peculiarly a question of fact for the court and jury to determine, after hearing the evidence, whether or not defendant's treatment to plaintiff is of such a nature as to render their living together insupportable.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Application for writ of error dismissed for want of jurisdiction.