**BEST v. BEST.**

No. 5893.

Court of Civil Appeals of Texas. Amarillo.

Sept. 20, 1948.

Croslin & Pharr, of Lubbock, for appellant.

Anderson & Howard, of Lubbock, for appellee.

STOKES, Justice.

This is a suit for divorce and partition of community property. It was instituted by the appellant, Margie Best, against her husband, the appellee, Jimmie Best, on the 13th of May, 1947. In her first amended original petition, upon which the case was tried, appellant alleged that she and appellee were married July 21, 1927, and lived together as husband and wife until October 31, 1946, when she was forced and compelled to abandon appellee because of his cruel and harsh treatment of her and his improper conduct toward her. The cruel treatment alleged consisted of her charge that in the year 1943, appellee began keeping company with other women and continued such associations constantly until they separated, showing affections for them openly and in public, spending his money and the savings of appellant and appellee upon them, subjecting himself and appellant to ridicule by the public and their friends, causing great embarrassment and humiliation to her and the children and causing them great mental suffering and anguish. She alleged that, when her original petition was filed, she and appellee then owned as their community property $500 in cash, a Ford tractor, an automobile, two trailers, certain household and kitchen furniture and a lease on a farm in Haskell County consisting of 200 acres which they were then farming.

Appellee answered by a general denial and specially denied all the charges of improper conduct made against him by appellant. He then pleaded a cross action against her in which he charged her with cruel treatment consisting of continuous and persistent false accusations over a period of about two years to the effect that he was devoting his time and attentions to other women.

The case was submitted to a jury upon special issues in which the jury found that appellee had not kept company with other women; that appellant nagged at him and accused him of keeping company with other women; that such accusations were false and were of such a nature as to render the further living together of appellant and appellee insupportable. It further found that on July 17, 1947, appellee sold and transferred to his brother-in-law the crops then growing and being cultivated by appellee, together with the automobile, the tractor, cook stove, butane tank and two trailers for the purpose of defrauding appellant and depriving her of her community interest therein. It found the value of all such articles, except the growing crops, to be $2,700 and the value of the growing crops, on July 17, 1947, to be $1,400. It further found that the indebtedness of the community at that time was $2,300.60; that appellee had paid all of the indebtedness; and that he received from his brother-in-law as consideration for the articles and crops sold to him, the sum of $3,000.

The court entered judgment upon the verdict granting a divorce to the appellee and denying a divorce to the appellant. It divided the rest of the community property equally between appellant and appellee and gave appellant judgment against appellee for $812.20, which was half the value of the property and crops sold by him, as found by the jury, after deducting from its value the indebtedness of the community paid by the appellee, and allowed appellant an attorney's fee of $250.

Appellant filed a motion for a new trial which was overruled and she thereupon duly excepted to the judgment, gave notice of appeal and presents the case in this court for review upon two assignments of error. She contends the judgment should be reversed, first, because the evidence upon which a divorce was granted to the appellee was not full and satisfactory, as required by art. 4632, R.C.S.1925, and was therefore insufficient to support the judgment, and, secondly, because the finding of the jury that the value of the crop sold by appellee on July 17, 1947, was only $1,400, when the undisputed evidence showed it eventually sold for the aggregate sum of $8,010, which would have greatly increased their community interest therein, after deducting the landlord's share and the reasonable expenses of harvesting and preparing them for the market.

■ Appellee testified that, about two years prior to their separation, appellant conceived the idea that he was paying undue attentions to other women and that she began a course of nagging at him about it.

He said that her accusations grew more frequent and positive until finally he was met with it every time he came home. He said he tried to explain to her that her accusations were false and without foundation and that he was not devoting his attentions to any other woman but she would not believe him or listen to his explanations and denials and that, after a period of two years in which she persistently and continuously charged him with such improper conduct, he came to the conclusion he could no longer live with her and told her that one of them would have to leave. He said she then left their home in Haskell County and went to Lubbock where she lived until this suit was instituted. He further testified that the accusations were wholly false and without any foundation whatever. He said that he never at any time devoted his attentions to any other woman and that the nearest he ever came to associating with them was to speak to neighbors and friends in a pleasant manner and talk with them to some extent on occasions when they were thrown together. Although appellant took the witness stand and testified at length, she did not controvert appellee's testimony, nor detail the circumstances of any occasion when appellee paid undue attentions to any other woman, nor attempt to reveal any conduct of appellee that could form the basis of the accusations which he said she made against him. Moreover, she did not deny she had made the accusations detailed by him. The jury was therefore fully warranted in exonerating the appellee from the charges of misconduct made against him by the appellant.

 In some cases the courts have indicated that, where the cruelty alleged and shown does not consist of physical violence or injury, but has reference to mental distress and the relationship of the parties, it must be such as to impair the health of the injured party. The true test is generally conceded to be, however, whether or not the acts and conduct are of such a nature as to render living together insupportable. It is now well settled by the authorities that, if the conduct alleged and shown is of such a nature as utterly to destroy the legitimate purpose and object of the marital relationship, it constitutes cruelty and jus-

tifies a cause of action for divorce and a judgment dissolving the marital relations. Dawson v. Dawson, 63 Tex.Civ.App. 168, 132 S.W. 379. Whether or not the treatment of the complaining party is of such nature as to render living together insupportable is a question of fact for the court or jury to determine and a wide discretion is conferred upon them in determining questions of fact pertaining both to divorce and the division of community property. While the grounds upon which the divorce was granted in this case appear from the record to be rather light, the trial judge and the jury had the opportunity of observing the witnesses as they testified and were in much better position to exercise the discretion than is an appellate court which views the case only from the written record. We cannot say that the court and jury abused their discretion in determining the questions of fact presented and, in the absence of a showing that the discretion has been abused, the appellate court will not revise or interfere with the conclusions of the trial court. Dawson v. Dawson, supra; Lloyd v. Lloyd, Tex.Civ.App., 107 S. W.2d 1047; Scannell v. Scannell, Tex.Civ. App., 117 S.W.2d 538; Kreiter v. Kreiter, Tex.Civ.App., 137 S.W.2d 184.

 Appellant further insists under this assignment that the court erred in granting appellee a divorce because the judgment was based solely upon the testimony of the appellee and was not corroborated by any other witness. The complaint and charges made by appellee against appellant were that she continually nagged at him and charged him with improper conduct in his associations and attentions to other women. Not only did appellant fail to controvert his testimony in respect to such charges, but she reiterated them in her petition in this case. It has been held in some cases that a divorce cannot be granted upon the uncorroborated testimony of the one seeking it and in other cases the courts have held that corroboration is not necessary. Lohmuller v. Lohmuller, Tex. Civ.App., 135 S.W. 751; Rivers v. Rivers, Tex.Civ.App., 133 S.W. 524; Tinnon v. Tinnon, Tex.Civ.App., 278 S.W. 288. We hold to the view that corroboration is not necessary, but, even if it should be, we

think it was amply provided by the allegations in appellant's petition. She not only charged him with the conduct as detailed by appellee but with exposing himself and appellant to great ridicule before the public and before their friends. These allegations are amply sufficient to show, not only that appellant made the charges detailed by appellee in his testimony, but that when the suit was tried, she was still asserting them and they, together with her failure to substantiate them in her testimony constituted corroboration of his testimony that they were not true.

■ Appellant next contends that the court erred in dividing the community property in accordance with the finding of the jury that the crops sold by appellee on July 17, 1947, were of the value of only $1,400 when the undisputed evidence showed they eventually sold for $8,010 in gross and before deducting the landlord's interests and expenses of harvesting and preparing them for the market. The complaint here presented is that, since the jury found the crops were sold by appellee before they matured, for the purpose of defrauding appellant and depriving her of her community interests in them, their value should have been determined as of the time when the crops were gathered and the products sold in the market. Special issue number 8 required the jury to find the value of the growing crops on July 17, 1947, the date when the appellee sold them to his brother-in-law, and the jury found their value at that time to be $1,400. Appellant made no objection to the special issue as submitted by the court, and she did not request the court to submit an issue as to the value of the products of the crops after they were gathered. Under rule 279, Texas Rules of Civil Procedure, she waived any issue concerning the value of such products at that time. The finding of the jury as to the value of the crops when they were sold in July is amply supported by the testimony. It is true that several months afterward, when the crops were harvested and sold in the market, they brought more than the jury found their value to be in July, but that would have nothing to do with their value at the time appellee sold them. Ap-

pellee and a number of other witnesses testified that prospects for the crops in July were very poor. They said the weather was extremely dry; the outlook for a good crop discouraging; and all of them fixed the value of the growing crops in July at less than the amount paid for them to appellee by his brother-in-law. Harris v. Harris, Tex.Civ.App., 174 S.W.2d 996. It was shown that no rains of any consequence fell until September, but that abundant rains came during that month which revived the growth of vegetation and produced a fairly good harvest.

■ The reason appellant contends she was entitled to more than her community share in the proceeds of the crops when they were sold is that appellee sold them at that time for the purpose of defrauding her and depriving her of her just share. While the jury found that appellee sold the growing crops and the other articles of community property for the purpose of defrauding appellant, there was no testimony whatever to support the finding and it should not have been submitted. Appellee testified that his indebtedness at that time amounted to $2,900. He said that, in view of the poor crop prospects, he feared he would not be able to discharge his indebtedness with the proceeds which he might obtain from a meager harvest. He said he was anxious to relieve himself of his debts and that his brother-in-law offered to pay him a sufficient amount to discharge them. A number of other witnesses corroborated his testimony in respect to the crop prospects at that time and no fact or circumstance was presented by any of the testimony which threw any suspicion whatever upon appellee's intentions or his conclusion to sell the crops before they matured. The court rendered judgment upon the special issues that were submitted and they were supported by the testimony. Appellant having waived any other special issues, in our opinion, the judgment entered was the proper one.

We have carefully examined the assignments of error and contentions presented by appellant and, in our opinion, no reversible error is revealed by any of them. The judgment of the court below will, therefore, be affirmed.