**Rachel A. SMITH, Appellant,**

v.

**Bailey B. SMITH, Appellee.**

**No. 5274.**

Court of Civil Appeals of Texas.

El Paso.

April 2, 1958.

Rehearing Denied April 16, 1958.

Potash, Cameron, Potash & Bernat, El Paso, for appellant.

Guinn & Guinn, El Paso, for appellee.

WILLIAMS, Justice.

This is an appeal from a judgment granting a divorce to Bailey B. Smith, appellee herein, from Rachel A. Smith, appellant, by the 34th District Court of El Paso County, Texas. The suit was first filed February 23, 1955 in the 41st District Court of this County. No answer was filed thereto, and the judge, after hearing the evidence of the plaintiff, granted divorce on May 27, 1955. This judgment was set aside by the judge of that court because appellant herein filed a verified motion stating that she was unable to employ an attorney to represent her, etc. The case was then transferred to the 34th District Court of this County. Appellant filed an answer, in which she requested that she be paid $200 per month as provided in a separation agreement dated September 11, 1950. On December 26, 1956 she filed an amended answer and cross-action in which she asked for a monetary judgment of over $7,000, allegedly for money she had advanced to appellee, and which he had not repaid. Divorce was granted to appellee on January 3, 1957, wherein it was found that there were no children born to the marriage, and that there was no community property right to be settled by the court. All other relief prayed for by either party was denied. This appeal followed, and appellant sets up six points of error, in substance as follows: (1) the court erred in entertaining jurisdiction, because appellee was not a bona fide resident of El Paso County; (2) the court erred in considering any evidence prior to the separation agreement, dated September 11, 1950, because both parties had lived together until that date, and all acts of cruelty were thereby condoned; (3) the court erred in granting the divorce because of insufficiency of the evidence; (4) the court erred in not sustaining appellant's motion for instructed verdict based on the three points above; (5) the court erred in failing to require appellee to pay $200 per month instead of $157, because the separation agreement required $200 a month; (6) because

the court erred in not granting appellant her monetary judgment as prayed for.

 Point 1 is most strenuously urged by the appellant, and we consider it the most serious question for our decision. Appellee came to El Paso February 8, 1954 as a member of the armed forces, and he immediately rented an apartment at 1615 North Mesa Avenue, of this City, and lived there constantly until shortly before this divorce was granted, when he was transferred by the Army to New Orleans, Louisiana. Therefore, the question is: Was he a bona fide inhabitant of the State of Texas for a year before this judgment was entered, as required by Article 4631, Vernon's Annotated Civil Statutes? Appellant relies very heavily on Gallagher v. Gallagher, Tex.Civ.App., Galveston, 1919, 214 S.W. 516, which holds that one's testimony at the trial that he intended, more than a year preceding, to establish his home in Texas, is insufficient. We will not dwell too long on the holding of the Gallagher case, because we think same is well distinguished in Warfield v. Warfield, Tex. Civ.App., Galveston, 1942, 161 S.W.2d 533, 534. It will be noted that this case is by the same court that decided the Gallagher case. In distinguishing the Gallagher case, the Warfield case says:

"* * * nor did he testify that he had ever, prior to instituting his suit for divorce, made any declarations to any person that he intended to make San Antonio his home, hence, of course, there had been no corroboration of what, if it existed at all, had been a purely subjective purpose on his part to reside there, and that appears to have been to take effect only after he got out of the army at a later date."

In the instant case Mrs. Charles Levy, owner of the house at 1615 North Mesa, where appellee lived all the time he was in El Paso, testified that on many occasions during 1954, he told her that El Paso was his home then, and that he intended to make it his home after he retired from the Army.

Some of her testimony to this effect is as follows:

"Well he frequently said that his home was in El Paso and that when he retired he was going to come back to El Paso to live. * * *

"Well, I can't say exactly when it was. Sometime while he was there. Several times he made that remark and he always liked El Paso and felt that was his home. * * *

"Yes, he said that was his plans, to come back; that he had no place else and he liked the climate."

Furthermore, the original petition in this case was filed February 23, 1955, in which appellee openly asserted that El Paso was his home and had been for more than twelve months. His first amended petition was filed December 11, 1956, wherein he again openly asserted that El Paso was his home. His second amended petition was filed January 3, 1957, wherein he again asserted that El Paso was his home. On that date the divorce was granted. During part of this time his daughter, Shirley, lived with him and went to school here in El Paso. Early in 1955, on account of his age, he was separated from the Army and re-enlisted 31 days thereafter; and he testified, without objection and without dispute, that he gave El Paso as his permanent address, and that it is still shown as his permanent address on his Army records. Therefore, we see that during the three-year interval before the divorce was granted, appellee had openly asserted, many times, that El Paso was his home and was going to continue to be his home after his retirement from the Army. Therefore, we think the Gallagher case is not at all in point, but that the Warfield case is in point, and we feel that it was correctly decided. See also, Robinson v. Robinson, Tex.Civ. App., San Antonio, 1950, 235 S.W.2d 228, 230, wherein it is said:

"An intention to establish a residence in the future is likewise insufficient. However, the fact that one is

a soldier or sailor does not deprive him of the right to change his residence or domicile and acquire a new one."

Appellee was separated from appellant in 1950 and, therefore, had a perfect right to establish his home anywhere he chose. We therefore hold that the evidence was sufficient to sustain the trial judge's finding of a bona fide residence in Texas, so as to give the court jurisdiction, and appellant's Point 1 is, accordingly, overruled.

On September 11, 1950, appellant and appellee signed a separation agreement in which they agreed, among other things:

"Likewise, the said Rachel A. Smith promises and agrees that she will not make any complaints or unfavorable report or statements about the said Bailey B. Smith to his superior military authorities or to other persons in authority over him, and will not, in any way, directly, or indirectly, injure or attempt to injure him in his reputation, profession, or in his status as an officer of the United States Army and will in every respect permit him to live his own life without interference from her as he agrees to do with respect to her."

The record shows that one of the letters written by the appellant and introduced in evidence was written immediately before the agreement was signed, and another was written four days after it was signed. This court, in 1950, in Gomez v. Gomez, 234 S.W.2d 941, 944, said:

"Condonation is tentative and conditional. It is effective so long as the particular act is not repeated and if the particular act complained of is repeated condonation relative thereto is no longer effective. The condonation is further conditioned on the treatment of the injured party with conjugal kindness and consideration in the future, and if this is not the case the former acts of cruelty are revived."

Therefore, we hold that the trial court did not err in admitting evidence of cruel treatment occurring before the separation agreement was signed, as the tentative condonation was abrogated. See also Redwine v. Redwine, Tex.Civ.App., Amarillo, 1946, 198 S.W.2d 472. Appellant's Point 2 is overruled.

The record in this case consists of some 250 pages and is replete with testimony, not only of the appellee, but of his daughter, that the appellant constantly nagged and fussed at the appellee, and made life so unbearable for him and his daughter that the daughter and her brother could not live in the home with them. It is shown that she failed and refused to treat the appellee's two children as a mother would be expected to do, but made their life with her unbearable for them. Furthermore, many letters, of the vilest and most obscene nature, debasing appellee, were written by appellant to members of appellee's family, and to his superior officers in the Army. In one, she said:

"Miss Shirley (his daughter) can have him, in her room, and in her bed like she did it, when she was living with us."

In another place, she said:

"* * * but I promise you that I am going to make such a scandal to ruin forever the reputation * * *."

In another, she said that Shirley had "spit poison as a snake in the heart of his father to poison my life * * *." In another, she wrote to Shirley:

"May God put in your road of destiny for the rest of your life two snakes like you and your brother * * *."

and to the son, she wrote:

"May God that you Sonny, you will have your reward very soon in being tortured by some of those wild Koreans or Reds, as your father tortured me * * *."

Appellant argues that these letters are addressed to members of appellee's family and

to his superior officers, and are not addressed to him, and, therefore, cannot be considered as cruel treatment of him. We find no merit whatever in this contention, and think the letters written to those people would cause the appellee much more mental anguish than had they been written directly to him. The record shows that appellant was not satisfied with sending one of her letters to one member of appellee's family, or to one superior officer, but would make many copies of them and send them to several such people. Appellee testified that such letters to his superior officers prevented his getting promotions as fast as he should, and that, on account of his age, he was forced to separate from the Army in 1955 as a lieutenant colonel, and 31 days thereafter he re-enlisted as a sergeant. We find the evidence is amply sufficient to support the judgment for divorce, and therefore overrule appellant's Point 3. Best v. Best, Tex.Civ.App., Amarillo, 1948, 214 S.W.2d 806.

Point 4 is based on the above three points and, therefore, we find no merit in it, and accordingly overrule it.

■ Appellant's Points 5 and 6 are to the effect that the court erred in not granting her a monetary judgment, Point 5 being for the $200 a month provided for in the separation agreement, and Point 6 being for money she claims she had advanced to appellee. The record shows that a hearing was had as to whether or not appellee should continue to pay $200 a month, and the court awarded $157 to appellant. This was paid. The evidence is very conflicting as to the amounts of money loaned by each party to the other, and appellee in one place categorically testified that he had paid appellant back every cent that he had borrowed from her. Therefore, we find there was ample evidence to support the trial court's judgment in this regard, and these points are overruled.

Wherefore, the judgment of the trial court is affirmed.